1   Alan D. Smith, Bar No. 89112
    ADSmith@perkinscoie.com
2   Amir Gamliel, Bar No. 268121
    AGamliel@perkinscoie.com
3   Bradley A. Cosman, Arizona Bar No. 026223
    *(pro hac vice application pending)*
4   BCosman@perkinscoie.com
    PERKINS COIE LLP
5   1888 Century Park E., Suite 1700
    Los Angeles, CA  90067-1721
6   Telephone:  310.788.9900
    Facsimile:  310.788.3399
7
    Proposed Counsel for Debtors-In-Possession
8

9                UNITED STATES BANKRUPTCY COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                    LOS ANGELES DIVISION

12  | In re | Case Nos.  2:15-bk-11084 SK |
13  |       |            2:15-bk-11085 NB |
    | STATE FISH CO., INC.; and | |
14  | CALPACK FOODS, LLC, | (Joint Administration Pending) |
15  |        Debtors. | Chapter 11 |

16                                     **NOTICE OF EMERGENCY
                                       APPLICATION AND EMERGENCY
17                                     APPLICATION FOR INTERIM
                                       AND FINAL ORDERS ASSUMING
18                                     THE DEBTORS' AGREEMENT
                                       WITH AVANT ADVISORY GROUP
19                                     AND APPROVING MR. BLANCO'S
                                       APPOINTMENT AS CHIEF
20                                     RESTRUCTURING OFFICER
                                       PURSUANT TO SECTIONS 105,
21                                     327, 330, 331 AND 363 OF THE
                                       BANKRUPTCY CODE, FED. R.
22                                     BANKR. P. 2014 AND 6003, AND
                                       LOCAL RULE 2014-1;
23                                     DECLARATION OF GEORGE P.
                                       BLANCO IN SUPPORT THEREOF;
24                                     MEMORANDUM OF POINTS AND
                                       AUTHORITIES IN SUPPORT
25                                     THEREOF**
26
27  THIS FILING APPLIES TO:
28

☒ ALL DEBTORS
☐ SPECIFIED DEBTOR
   ☐ STATE FISH CO., INC.
   ☐ CALPACK FOODS, LLC

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR'S PREPETITION LENDER, THE CREDITORS APPEARING ON THE LIST FILED IN ACCORDANCE WITH RULE 1007(D) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND PARTIES REQUESTING SPECIAL NOTICE:**

    **PLEASE TAKE NOTICE THAT** State Fish Co., Inc. and Calpack Foods, LLC (collectively, the "*Debtors*") hereby respectfully apply with this Court (the "*Application*") for entry of interim and final orders assuming assumption of the Debtors' prepetition agreement with Avant Advisory Group ("*Avant*") and approving George Blanco's appointment as Chief Restructuring Officer ("*CRO*") as of the Petition Date in accordance with the terms and conditions set forth in the engagement letter, dated as of January 21, 2015 (the "*Engagement Letter*") and attached hereto as Exhibit "A."

    The Debtors submit the declaration of George Blanco ("*Blanco Decl.*") in support of this Application, attached hereto as Exhibit "B." Relief is sought on an emergency basis, pursuant to Local Bankruptcy Rules 2081-1(a) and 9075-1, because the retention of Avant and the CRO are essential to the Debtors' ability to seamlessly operate under these chapter 11 cases.

    **PLEASE TAKE FURTHER NOTICE** that the Application is based upon Sections 105, 363, 327(a), 330 and 331 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rules 2014 and 6003 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), Local Bankruptcy Rules 2014-1, 2081-1(a) and 9075-1, this Notice, the Notice of Emergency Motions that will be filed and served as soon as Debtors obtain a hearing date for their First Day Motions, the attached Memorandum of Points and Authorities, the Blanco Decl., the Declaration of Vanessa DeLuca in Support of the Debtors' First Day Pleadings ("*DeLuca Declaration*"), the arguments of counsel and all other evidence properly before the Court at or before the hearing on

this Application. Debtors further request that the Court take judicial notice of all documents filed with the Court in this case.

**PLEASE TAKE FURTHER NOTICE** that any opposition or response to the Application may be filed with the Court and served on proposed counsel for the Debtors at any time before the hearing, or may be presented at the hearing on the Application. Separate notice of the date and time of the hearing on this Application will be provided as soon as it is available. Please note, failure to timely object may be deemed by the Court to constitute consent to the relief requested herein. The Debtors will serve this Notice of Application and Application, and all other pleadings in support thereof, on: (i) the Office of the United States Trustee, (ii) the list of the Debtors' 20 largest unsecured creditors, (iii) counsel to the Debtors' prepetition lender, and (iv) all parties that file with the Court requests for notice of all matters pursuant to Bankruptcy Rule 2002. To the extent required, Debtors respectfully request that the Court waive compliance with Local Bankruptcy Rule 9075-1 and approve service, in addition to the means of service set forth in such Local Bankruptcy Rule, by overnight or electronic delivery. To the extent the Court grants the relief requested herein, the Debtors shall provide notice of the entry of an Order granting such relief upon each of the foregoing parties.

DATED: January 26, 2015                    **PERKINS COIE LLP**

                                           By: /s/ Alan D. Smith
                                               Alan D. Smith, Bar No. 89112
                                               ADSmith@perkinscoie.com
                                               Amir Gamliel, Bar No. 268121
                                               AGamliel@perkinscoie.com
                                               Bradley A. Cosman, Bar No. 026223
                                               BCosman@perkinscoie.com

                                           Proposed Counsel to Debtors-In-Possession

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

The Debtors seek entry of an order, in accordance with Sections 105, 327(a), 330, 331 and 363 of the Bankruptcy Code, Rules 2014 and 6003 of the Bankruptcy Rules, and Local Bankruptcy Rule 2014-1, approving the assumption of the Debtors' prepetition agreement with Avant and the appointment of George Blanco as CRO as of the Petition Date, under the terms and conditions set forth in the attached Engagement Letter.  Pursuant to the Engagement Letter, Mr. Blanco will serve as CRO, and additional individuals employed by Avant will provide other critical management services to the Debtors.

Relief is sought on an emergency basis because the Debtors require the CRO and Avant to immediately begin providing services of an experienced CRO and crisis managers to guide them through a restructuring of the Debtors' operations and a successful resolution of their chapter 11 cases.  In addition, Mr. Blanco and Avant's role are critical in these chapter 11 cases, as Avant and Mr. Blanco will supplant the function and role of all officers of the Debtors as of the commencement of these chapter 11 cases.  Any delay of the CRO's and Avant's services would thus cause irreparable harm to the Debtors' estate.

The Debtors submit that the relief requested in this Application is in the best interests of the Debtors' estates, their creditors, equity holders, and all other parties-in-interest.  Avant is a consulting firm that specializes in advising troubled companies on the development and implementation of solutions that result in returning businesses to operational health.  Mr. Blanco, a managing director of Avant, is a nationally known turnaround expert with more than twenty-five years of experience in restructuring companies and serving as a chief restructuring officer of debtors.  In sum, Avant and Mr. Blanco are well-qualified to provide CRO services for the Debtors in a cost-effective, efficient and timely manner, and absent their retention it would be difficult, if not impossible, for the Debtors to effectuate the successful administration of these chapter 11 cases.

## II.    BACKGROUND

### A.    Jurisdiction and Venue

On January 26, 2015 (the "***Petition Date***"), the Debtors filed in this Court voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "***Bankruptcy Code***").  The Debtors continue to operate their businesses and manage their assets as debtors-in-possession under Bankruptcy Code §§ 1107 and 1108.  This Court has jurisdiction over these chapter 11 cases under 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtors are California corporations whose principal places of business are in Los Angeles County.  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.  No trustee or examiner has been appointed in this case, nor has an official committee of unsecured creditors been appointed.

### B.    Background Facts Concerning the Debtors

The factual background concerning the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, are set forth in detail in the DeLuca Declaration, which is incorporated herein by reference.

## III.    PROFESSIONAL QUALIFICATIONS AND SERVICES PROVIDED

Avant provides a broad range of business, executive, and consulting services to public, middle-market and growth companies.  It specializes in:  (i) turnarounds, restructuring and bankruptcy, (ii) enterprise performance improvement, (iii) forensics, fraud investigations, and litigation support; (iv) mergers, acquisitions, and capital transactions, and (v) C-suite executive and interim management.  Avant has substantial experience in chapter 11 cases and other corporate restructurings, as evidenced by their retention in the bankruptcies of *In re No Fear Retail Stores, Inc., et al.*, S.D. Cal. Bankr. Case No. 11-02896-MM11, and *In re Mi Pueblo San Jose, Inc.*, N.D. Cal. Bankr. Case No. 13-53893-ASW.

The Debtors have exercised their sound business judgment in selecting Avant to provide CRO services in connection with these chapter 11 cases.  The Debtors believe that Avant's and

Mr. Blanco's services are imperative to their successful administration of these chapter 11 cases, and that they are well-qualified to provide their services to the Debtors in a reasonable manner.

Avant and Mr. Blanco have agreed to provide the following services in connection with these chapter 11 cases, as more fully set forth in the Engagement Letter.

 i. <u>Reporting Relationship</u>.  Avant will report directly to the Board of Directors of the Debtors (the "**Board**").  In addition, Avant will make available:

  a. George Blanco to serve as Chief Restructuring Officer.

  b. Upon the mutual agreement of Avant and the Debtors, such additional Avant professionals as appropriate and necessary to support the CRO and assist in performing the duties set forth below ("**Additional Personnel**").

a. <u>Specific Services</u>.  During the term of the Agreement, as directed by the Board and in consultation and coordination with the Debtors' management team, legal counsel, and investment banker (if applicable), Avant will perform the following services:

 i. Complete a comprehensive study and analysis of the business, operations, capital structure, financial condition, projections (including cash flow and liquidity), and short- and long-term prospects of the related business operations.

 ii. Assist in identification of business and restructuring opportunities to best reflect the value options of the Debtors which may include the following areas: cost reductions, operational improvements, working capital management, revenue improvements, management and personnel changes, strategic and financing alternatives, or financial restructuring transactions for the Debtors (including a sale of the Debtors or the Debtors' assets). Avant will both identify opportunities for the Debtors and assist in executing those opportunities, wherever possible.

 iii. Help in preparation, analysis and monitoring of historical, current and projected financial affairs, including without limitation, if necessary, schedules of assets and liabilities, statements of financial affairs, periodic operating reports, evaluation of cash receipts and disbursements, review of cash flow forecasts, management of cash flows, analysis of various asset and liability accounts, analysis of any unusual or significant transactions between the Debtors and any other entities, and consideration of proposed restructuring transactions.

 iv. Approve or disapprove of new agreements or amendments or modifications to existing agreements between either of the Debtors and any former employee of either of the Debtors who is also a shareholder, directly or indirectly, of State Fish.

    v.    Coordinate with and assist counsel and any other professionals retained by the Debtors as needed.

    vi.    Meet with the Board (or members of the board), and appropriate management team members regarding the identification and evaluation of restructuring strategies, including various alternatives for improving profitability and managing cash flows to improve viability of the Debtors' business operations through a sales process. Avant will coordinate its actions with the Board, including its status of activities and critical issues that arise which should be surfaced for review by the Board.

c.    Additionally, the following services represent activities that Avant may perform on behalf of the Debtors and the Board but are not intended to be comprehensive:

    i.    Consult with the Debtors' management team regarding its existing restructuring plan, and other appropriate strategic alternatives to restructure, refinance, and help sell the Debtors or complete a transaction, as needed.

    ii.    Conduct detailed walk-throughs of business operations to confirm, update and/or develop a tactical plan for strategic alternatives. In this regard, conduct a detailed review of the 2015 business plan and assess key drivers affecting profitability and cash flows.

    iii.    Review and analyze the Debtors' cash flow assumptions, and assist with updating the 13 week cash flow model, as needed. In this regard, review various scenarios and help develop a strategy for optimizing cash availability.

    iv.    As appropriate, develop a tactical plan for managing vendor and other business relationships.

    v.    Evaluate the need and options for debtor-in-possession ("*DIP*") financing to support the restructuring process or as needed to complete a transaction. As appropriate, identify and work with outside capital sources to complete a DIP financing.

    vi.    Conduct such activities as needed to support the Debtors in the refinancing and/or sale of the businesses, including preparing needed support materials, assisting with management presentations, supporting negotiations to a transaction, and helping to populate a virtual or physical data room.

    vii.    Participate in weekly or as otherwise scheduled meetings with the Board to review tactical plans and activities. In this regard, a specific area of focus will include the Debtors' liquidity position and options for improving cash flows and working capital availability over the next 60 to 90 days.

viii.   Avant will work directly with the Debtors' management to update the Board on options to generate cash and improve the Companies' liquidity position to support the restructuring process.

ix.   Review the Debtors' current budget and action plans and help identify those actions required to support an appropriately profitable business operations, including adjustments to labor costs and viability of selected products and customers subject to gross margin or dollar contribution.

x.   Work with appropriate personnel to update the fiscal 2015 monthly budget and, as needed, help to develop alternative scenarios and a multi-year set of projections.

xi.   Assist with negotiations and support related to the Debtors' lender, vendors and creditors to support a restructuring of the business and/or to complete a transaction.

xii.   Prepare a tactical plan with management for managing and negotiating with various parties-in-interest including vendors, lenders, and employees.

xiii.   As an alternative, should other options not materialize or cease to be viable, Avant would determine with management and counsel such other tasks and deliverables that would be needed to support negotiations with parties-in-interest, including preparation of a liquidation analysis and/or tasks appropriate for a wind-down, as needed.

xiv.   Develop a strategy and those deliverables appropriate for updating the Debtors' lender regarding strategic alternatives, including serving as a DIP lender if determined to be the most appropriate strategic option.

xv.   Avant will also assist in preparation of the following activities:

    a) Compile and assist with the preparation of information necessary to comply with requirements of the Bankruptcy Code.

    b) Assist and facilitate the Debtors' communications and negotiations with creditors, shareholders, and other constituents, including, without limitation, any official committee of unsecured creditors and the Office of the United States Trustee (collectively, the "***Interested Parties***"). It is understood that Avant may be called upon to communicate regularly with the Interested Parties and their financial advisors and, as appropriate, furnish to such Interested Parties financial information relating to the Debtors.

    c) Prepare information and disclosures to the Bankruptcy Court and/or Office of the United States Trustee;

    d) Compile and assist with preparation of schedules of assets and liabilities, statements of financial affairs, and periodic operating reports;

e) Compile, assist with preparation, analyze and/or monitor historical, current and projected financial affairs, including analyses of cash receipts and disbursements, analyses of cash flow forecasts, management of cash flow, analyses of various asset and liability accounts, and analyses of any unusual or significant transactions between themselves and any other entities;

f) Along with counsel, identify and/or review preference payments, fraudulent conveyances, and any other causes of action;

g) Review and evaluate the claims process;

h) Attend meetings and court hearings as may be required, including participating as a testifying or consulting witness or expert as requested;

i) Provide such other services as may be requested by the Debtors and to which Avant agrees to provide.

The Debtors submit that the foregoing services are necessary, will not be duplicative of services to be provided by other professionals, and will help allow the effective administration of these chapter 11 cases.

## IV.    PROFESSIONAL COMPENSATION[1]

The Debtors seek to retain Avant and Mr. Blanco pursuant to sections 105(a) and 363 of the Bankruptcy Code, and sections 327(a), 330, and 331 of the Bankruptcy Code. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law in various circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the Debtors, such use should be approved. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.3d 513, 515 (7th Cir. 1991); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1070 (2d Cir. 1983). Bankruptcy courts have analyzed a debtor's employment of corporate restructuring officers, managers, crisis officers, advisors and professionals under section 363 of the Bankruptcy Code on numerous occasions and have

---

[1] Capitalized terms used in this section that are not otherwise defined shall retain the same meanings given to them in the Engagement Letter.

determined it is an appropriate exercise of the debtor's business judgment to employ a restructuring professional in this manner. *See, e.g., In re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr. C.D. Cal. June 25, 2010); *In re Fatburger Restaurants of California, Inc., et al.*, Case No. 09-13965; and *In re eToys*, 331 B.R. 176 (Bankr. D. Del. 2005 (officers are not professionals, but court has power to supervise them). Copies of these orders, which are voluminous, are available upon request made to the Debtors' proposed counsel.

The Court's general equitable powers codified in section 105(a) of the Bankruptcy Code, which provide that a court may "issue any order, process, or judgment that is necessary to carry out the provisions of this title," also warrant the requested relief. 11 U.S.C. § 105(a); *see also In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out specific provisions of the Bankruptcy Code.")

Notwithstanding Avant's retention under section 363 of the Bankruptcy Code, Avant agrees to submit interim and final fee applications pursuant to sections 327(a), 330 and 331 of the Bankruptcy Code. The Debtors submit that the fee structure and expense reimbursement provisions (as described below) are reasonable terms and conditions of employment under Section 330 in light of the nature and scope of the services to be provided by Avant and Mr. Blanco, the industry practice with respect to fee provisions typically utilized by comparable financial advisory consultants and C-suite executives, the market rates for comparable services both in and out of the chapter 11 context, and Avant and Mr. Blanco's experience with respect to financial restructuring, advisory services, and/or C-suite type services.

The Engagement Letter was negotiated in good faith and at arm's-length between the Debtors and Avant. The Debtors submit that the employment of Avant, with Mr. Blanco serving as CRO, reflects a sound exercise of their business judgment and satisfies section 363 of the Bankruptcy Code. Avant, Mr. Blanco, and the Additional Personnel assigned to this engagement have extensive experience providing management and financial services to distressed companies. Their services are integral to the success of these chapter 11 cases. Denying the relief requested

in this Application would require the Debtors to engage a new CRO who lacks a similar understanding of the Debtors' business and restructuring goals, both already in progress and those to be implemented. Hiring a new CRO would involve a steep learning curve, significant time, and additional estate resources.

The Debtors submit that the fee structure is consistent with and typical of compensation agreements entered into by Avant and other comparable firms in connection with the rendering of similar services under similar circumstances. The terms of the Engagement Letter are within the range of those for senior executive officers employed with companies of comparable size, value and reputation. Accordingly, the Debtors submit that the fee structure is both fair and reasonable under the standards set forth in Bankruptcy Code section 330.

With the foregoing in mind, the Debtors have agreed to the following compensation structure with Avant in consideration of the services to be provided in these chapter 11 cases, as more fully described in the Engagement Letter:

(i)  Approval of fees and costs to be paid to Avant by the Debtors shall be subject to one or more duly noticed fee applications to be approved by this Court.

(ii)  On January 22, 2015, Avant received a retainer of $75,000 from the Debtors for postpetition services. In addition, on January 24, 2015, Avant received a payment of $19,704 in satisfaction of its prepetition fees and expenses.

(iii)  Postpetition, Avant will present invoices to the Debtors every two weeks for payment. Subject to approval by the bankruptcy court, the interim payment procedure for its invoices will be 80% of fees and 100% reimbursement of expenses due immediately upon presentation of the invoice. Avant will file fee applications in accordance with the United States Trustee guidelines and the local rules, and all payments to Avant shall remain subject to review and approval under interim and final fee applications.

(iv)  Hourly billing rates for Avant's most senior level professionals range up to $495 per hour for similar situations. However, Avant has committed to provide

George P. Blanco, managing director and partner, at a rate not to exceed $395 per hour, given the size of the Debtors and their marketplace. However, Messrs. Michael Ozawa and James Davidson would continue to charge up to $495 per hour for their specialized and technical support services. A schedule of professional fee rates is as follows:

| | |
|---|---|
| Managing Directors / Directors | $395 to $495 |
| Principal Consultants | $295 to $395 |
| Consultants | $225 to $325 |
| Para Professionals / Analysts | $175 to $250 |
| Administrative Staff | $75 to $100; |

(v)    In addition to the fees set forth above, Avant shall be entitled to reimbursement for actual out-of-pocket costs that include, when appropriate, travel/mileage, meals and lodging, photocopies, faxes, telephone charges, computer support, printing costs, miscellaneous charges, etc. In addition to the fees described above, should it be required in the future, Avant will be compensated for the time of its staff members at their then hourly rates, and paid its expenses (including, without limitation, engagement-related administrative costs, and reasonable attorney's fees and expenses) that Avant may incur in connection with considering or responding to discovery requests or other requests for documents, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, as a result of Avant's performance of these services, including those related to executing or defending Avant's fee applications in the event of chapter 11 or similar proceedings.

(vi)    The forum for handling of any dispute in fees will be the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

(vii)    In addition, the Debtors will take appropriate measures to add Mr. Blanco as a covered party to the Debtors' directors and officers insurance, and all other relevant, active insurance policies carried by the Debtors.

1

2 **V.    STATEMENT OF DISINTERESTEDNESS**

3    Although the general view is that officers of the debtor are not professionals whose

4 employment must be approved by the Court, the Debtors nevertheless represent, to the best of

5 their knowledge, that Avant is a "disinterested person," as the term is defined in section 101(14)

6 of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  Moreover, as

7 required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, Avant

8 neither holds nor represents any interest adverse to the Debtors and their estates, and except as

9 otherwise disclosed in the Blanco Declaration, has no connection to the Debtors or their

10 significant creditors or certain other potential parties-in-interest whose names were supplied to

11 Avant by the Debtors.  Other than as set forth in this Application and the Blanco Declaration,

12 Avant has no prior involvement with, or connection to, the Debtors.

13    Furthermore, to the best of the Debtors' knowledge, information and belief, and based

14 upon the Blanco Declaration, none of Avant's past or existing engagements would, or appears to,

15 create an interest materially adverse to the interests of the Debtors, their creditors, or their equity

16 security holders.  As such, to the extent Avant's or Mr. Blanco's retention do require Court

17 approval, the Debtors submit that Avant is disinterested and holds no materially adverse interest

18 as to the matters upon which they are to be retained.  To the extent Avant discovers any additional

19 facts bearing on its disinterestedness during the period of its retention, Avant will supplement the

20 information contained in the Blanco Declaration.

21    Avant has, among other things, searched its client databases to determine whether it

22 represents, or has represented, certain of the Debtors' creditors or other parties-in-interest in these

23 proceedings, and/or matters wholly unrelated to these proceedings.  Avant has also informed the

24 Debtors, in accordance with Section 504 of the Bankruptcy Code, that there is no agreement or

25 understanding between Avant and any other entity, other than an employee of Avant, for the

26 sharing of compensation received or to be received for services rendered in connection with these

27 chapter 11 cases.

28

## VI.    NOTICE

The Debtors have provided notice of this Application to:  (i) the Office of the United States Trustee; (ii) creditors appearing on the list filed in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure; (iii) counsel to the Debtors' prepetition lender; and (iv) all entities that have requested notice of the proceedings in this chapter 11 case pursuant to Bankruptcy Rule 2002.

## VII.    CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court enter an interim and final order (i) authorizing the Debtors to assume their pre-petition agreement with Avant pursuant to the Engagement Letter, effective as of the Petition Date, and (ii) authorizing Mr. Blanco's retention as CRO, effective as of the Petition Date.

DATED:  January 26, 2015                    **PERKINS COIE LLP**


                                             By: */s/ Alan D. Smith*
                                                 Alan D. Smith, Bar No. 89112
                                                 ADSmith@perkinscoie.com
                                                 Amir Gamliel, Bar No. 268121
                                                 AGamliel@perkinscoie.com
                                                 Bradley A. Cosman, Bar No. 026223
                                                 BCosman@perkinscoie.com

                                             Proposed Counsel to Debtors-In-Possession

113502-0001/LEGAL124814768.4          -11-          Debtors' Application for Employment of Avant
                                                    and CRO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit "A"**

**Engagement Letter**

See attached.

Debtors' Application for Employment of Avant
and CRO

AVANT
ADVISORY GROUP

LEVERAGING TRUST

Turnarounds & Restructuring      M&A Support      Enterprise Performance Improvement      Forensics      CFO Services      Interim Management

**Via Electronic Mail**

January 21, 2015

Board of Directors
State Fish Co., Inc.
c/o: Mr. Kirk Waldron                                                    cc: kwaldron99@hotmail.com
2066 Creekwood Street
Westlake Village, CA 91361

**RE:**  Engagement of Avant Advisory Group for Restructuring Services

Dear Mr. Waldron:

This letter confirms and sets forth the terms and conditions of the engagement between Avant Advisory Partners, LLC ("Avant" or "We") and State Fish Company, Inc. ("State Fish") and Calpack Foods, LLC ("Calpack," and collectively with State Fish, the "Companies," or "You"), and the scope of services to be performed and basis of compensation for those services. Upon execution of this engagement letter ("Agreement"), this will constitute the Agreement between Avant and the Companies.

We understand that the Companies are currently evaluating various strategic options, including a potential sale of some or all of the Companies, and/or consideration of a Chapter 11 proceeding to support a restructuring.

1.  **Description and Scope of Services**

    a.  Reporting Relationship.  Avant will report directly to the Board of Directors of State Fish (the "Board"). In connection with this engagement.  Avant:

        i.   Will serve as financial advisor to the Companies;

        ii.  Upon a filing of a petition under Title 11 of the United States Bankruptcy Code, will make available:

             a.  George Blanco to serve as Chief Restructuring Officer ("CRO").

             b.  Upon the mutual agreement of Avant and the Companies, such additional Avant professionals as appropriate and necessary to support the CRO and assist in performing the duties set forth below ("Additional Personnel").

    b.  Specific Services.  During the term of this Agreement, as directed by the Board and in consultation and coordination with the Companies' management team, legal counsel, and investment banker (if applicable), Avant will perform the following services:

        i.   Complete a comprehensive study and analysis of the business, operations, capital structure, financial condition, projections (including cash flow and liquidity), and short- and long-term prospects of the related business operations.

601 S. Figueroa Street, Suite 4050                                    4000 MacArthur Blvd, Suite 600
Los Angeles, CA 90017                                                 Newport Beach, CA 92660
(213) 330-3383                                                        (949) 417-5708
LEGAL124814221.1

Mr. Kirk Waldron
State Fish Co., Inc.
January 21, 2015



ii.   Assist in identification of business and restructuring opportunities to best reflect the value
      options of the Companies which may include the following areas: cost reductions, operational
      improvements, working capital manage, revenue improvements, management and personnel
      changes, strategic and financing, or financial restructuring transactions for the Companies
      (including a sale of the Companies or the Companies' assets).   Avant will both identify
      opportunities for the Companies and assist in executing those opportunities, wherever possible.

iii.  Help in preparation, analysis and monitoring of historical, current and projected financial affairs,
      including without limitation, if necessary, schedules of assets and liabilities, statements of
      financial affairs, periodic operating reports, evaluation of cash receipts and disbursements,
      review of cash flow forecasts, management of cash flows, analysis of various asset and liability
      accounts, analysis of any unusual or significant transactions between the Companies and any
      other entities, and consideration of proposed restructuring transactions.

iv.   Approve or disapprove of new agreements or amendments or modifications to existing
      agreements between either of the Companies and any former employee of either of the
      Companies who is also a shareholder, directly or indirectly, of State Fish.

v.    Coordinate with and assist counsel and any other professionals retained by the Companies as
      needed.

vi.   Meet with the Board (or members of the board), and appropriate management team members
      regarding the identification and evaluation of restructuring strategies, including various
      alternatives for improving profitability and managing cash flows to improve viability of the
      Companies' business operations through a sales process. We will coordinate our actions with  the
      Board, including our status of activities and critical issues that arise which should be surfaced for
      review by the Board.

Additionally, the following services represent activities that Avant may perform on behalf of the
Companies and the Board but are not intended to be comprehensive:

i.    Consult with the Companies' management team regarding its existing restructuring plan, and
      other appropriate strategic alternatives to restructure, refinance, and help sell the Companies
      or complete a transaction, as needed.

ii.   Conduct detailed walk-throughs of business operations to confirm, update and / or develop a
      tactical plan for strategic alternatives. In this regard, conduct a detailed review of the 2015
      business plan and assess key drivers affecting profitability and cash flows.

iii.  Review and analyze the Companies' cash flow assumptions, and assist with updating the 13 week
      cash flow model, as needed.  In this regard, review various scenarios and help develop a strategy
      for optimizing cash availability.

iv.   As appropriate, develop a tactical plan for managing vendor and other business relationships.

Mr. Kirk Waldron
State Fish Co., Inc.
January 21, 2015



v.   Evaluate the need and options for debtor-in-possession ("DIP") financing to support the restructuring process or as needed to complete a transaction. As appropriate, identify and work with outside capital sources to complete a DIP financing.

vi.   Conduct such activities as needed to support the Companies in the refinancing and / or sale of the businesses, including preparing needed support materials, assisting with management presentations, supporting negotiations to a transaction, and helping to populate a virtual or physical data room.

vii.   Participate in weekly or as otherwise scheduled meetings with the Board to review tactical plans and activities. In this regard, a specific area of focus will include the Companies' liquidity position and options for improving cash flows and working capital availability over the next 60 to 90 days.

viii.   We will work directly with the Companies' management to update the Board on options to generate cash and improve the Companies' liquidity position to support the restructuring process.

ix.   Review the Companies' current budget and action plans and help identify those actions required to support an appropriately profitable business operations, including adjustments to labor costs and viability of selected products and customers subject to gross margin or dollar contribution.

x.   Work with appropriate personnel to update the fiscal 2015 monthly budget and, as needed, help to develop alternative scenarios and a multi-year set of projections.

xi.   Assist with negotiations and support related to the Companies' lender, vendors and creditors to support a restructuring of the business and / or to complete a transaction.

xii.   Prepare a tactical plan with management for managing and negotiating with various parties-in-interest including vendors, lenders, and employees.

xiii.   As an alternative, should other options not materialize or cease to be viable, we would determine with management and counsel such other tasks and deliverables that would be needed to support negotiations with parties-in-interest, including preparation of a liquidation analysis and / or tasks appropriate for a wind-down, as needed.

xiv.   Develop a strategy and those deliverables appropriate for updating the Companies' lender regarding strategic alternatives, including serving as a DIP lender if determined to be the most appropriate strategic option.

xv.   Presuming a Chapter 11 proceeding is determined to be in the Companies' best interest, Avant will assist in preparation of the following activities:

a)   Compile and assist with the preparation of information necessary to comply with requirements of the Bankruptcy.

b)   Assist and facilitate the Companies' communications and negotiations with creditors, shareholders, and other constituents, including, without limitation, any official committee

Mr. Kirk Waldron
State Fish Co., Inc.
January 21, 2015



of unsecured creditors and the Office of the United States Trustee (collectively, the "Interested Parties"). It is understood that Avant may be called upon to communicate regularly with the Interested Parties and their financial advisors and, as appropriate, furnish to such Interested Parties financial information relating to the Companies.

c) Prepare information and disclosures to the Bankruptcy Court and/or Office of the United States Trustee;

d) Compile and assist with preparation of schedules of assets and liabilities, statements of financial affairs, and periodic operating reports;

e) Compile, assist with preparation, analyze and/or monitor historical, current and projected financial affairs, including analyses of cash receipts and disbursements, analyses of cash flow forecasts, management of cash flow, analyses of various asset and liability accounts, and analyses of any unusual or significant transactions between themselves and any other entities;

f) Along with counsel, identify and/or review preference payments, fraudulent conveyances, and any other causes of action;

g) Review and evaluate the claims process;

h) Attend meetings and court hearings as may be required, including participating as a testifying or consulting witness or expert as requested;

i) Provide such other services as may be requested by the Companies' and to which we agree to provide.

c. <u>Employment by Avant</u>. The CRO and additional Avant personnel will be employed by Avant. However, the CRO and additional Avant personnel will operate under the direction of the Board. The CRO will be available as mutually agreed between the Companies and Avant during the term of this Agreement. The following conditions will include the employment by Avant of the CRO:

i. The Companies' and Avant will remain independent contracting parties; the arrangements contemplated by this Agreement do not create a partnership, joint venture, employment, fiduciary or similar relationship for any purpose. Avant will be solely responsible for the payment of all wages and other compensation of its personnel, including the CRO and all Avant personnel. None of the CRO or the additional Avant personnel will be entitled to receive any compensation or benefits from the Companies or to participate in any Companies' compensation, benefits, incentive, insurance or other plan or program, other than as specifically stated herein.

ii. The Companies' will cause the CRO to be covered under State Fish's directors' and officers' liability insurance policy on a basis consistent with that of other senior officers of State Fish.

iii. Avant, the CRO, and all additional Avant personnel will comply with the Codes of Professional and Ethical Conduct as ascribed through the respective professional associations including the Turnaround Management Association, Association of Insolvency and Restructuring Advisors, the American Institute of Certified Public Accountants, the Association of Certified Fraud Examiners, the Alliance of Merger & Acquisition Advisors, and others of which Avant and its professionals are members.

Turnarounds & Restructuring        M&A Support        Enterprise Performance Improvement        Forensics        CFO Services        Financial Advisory

LEGAL124814221.1

Mr. Kirk Waldron
State Fish Co., Inc.
January 21, 2015



d. <u>Duties of Avant.</u>  The Board and the Companies' recognize and confirm that in connection with performing the services hereunder, we will be relying upon information and the accuracy of same that is supplied to us by you or on your behalf, and we will not in any respect be responsible for performing an audit. Also, note these procedures may change depending on ability of the Companies' to provide information or as determined in our professional judgment to accomplish the objectives.

e. **Projections; Reliance; Limitation of Duties.**  You understand that the services to be rendered by Avant, hereunder, may include preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Companies' operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, we will be relying on information provided by the Companies' management in preparation of those projections and other forward-looking statements. Avant makes no representation or warranty that strategic alternatives can be formulated for the Companies, and that any strategic alternative presented to the Companies will be more successful than any other strategic alternatives. Avant assumes no responsibility for the Companies' approval or adoption of any strategic alternative formulated or presented. However, Avant will advise the Companies of recommendations and professional judgments regarding such proposals. Avant will be responsible for implementation only of the strategic alternative, if any, approved by State Fish and only to the extent and in the manner authorized and directed by Companies.

**2.   Timetable.**

We understand the importance and urgency of your needs and will expedite our response in supporting you.  In anticipation of your execution of this Agreement and provision of the retainer against which we will charge our fees and expenses, we are prepared to immediately marshal our resources and be accessible to you.

**3.   Deliverables.**

We will provide frequent status reports to you regarding these services. Further, we will immediately communicate any significant issues or potential considerations that could significantly impact your objectives. We will work with you to complete the various schedules, reports, forecasts, etc. on an expedited basis.

**4.   Consulting Team.**

George P. Blanco, CIRA, CTP, Avant managing director & partner, will direct our engagement with you.  He will be assisted as needed by Avant's other managing directors and/or consultants. Potential supporting and supplemental firm resources include Avant managing director & partner, Michael M. Ozawa, CPA/CFF, CIRA, CFE, CGMA who is available to provide fieldwork support, industry and accounting expertise, quality control, and administrative and backup support, as appropriate. Other Avant consultants will be utilized, whenever appropriate, in an efficient and cost effective manner. As needed, an onsite consultant / analyst will assist with the preparation of financial projections, data collection and selected interviews, including revising and updating financial models and helping in the preparation of deliverables.

If, at any time during the time frame in which an Avant team member is providing services to the Companies and for a period of 12-months thereafter, other than in connection with this agreement or another Avant agreement, the Companies' employ or engages such Avant team member as an independent contractor, the Companies will pay Avant a placement fee of not less than 30% of total compensation.  The amount will be subject to another form of agreement with Avant, the terms of which will be negotiated at such time.

Turnarounds & Restructuring        M&A Support        Enterprise Performance Improvement        Forensics        CFO Services        Financial Advisory

LEGAL124814221.1

Mr. Kirk Waldron
State Fish Co., Inc.
January 21, 2015

**AVANT**
ADVISORY GROUP
LEVERAGING TRUST

## 5.  Professional Fees

Hourly billing rates for our most senior level professionals range up to $495 per hour for similar situations.  However, we would commit to provide George Blanco, managing director and partner, to you at a rate not to exceed $395 per hour, given the size of the Companies and their marketplace.  However, Messrs. Michael Ozawa and James Davidson, CIRA, CTP, CFE, CPA/CFF, CM&AA, MAFF, CGMA, CD, Avant managing director and partner, would continue to charge up to $495 per hour for their specialized and technical support services.  We shall be entitled to reimbursement for out-of-pocket costs that include, when appropriate, travel / mileage, meals and lodging.  A schedule of professional fee rates is listed below.

| | |
|---|---|
| Managing Directors & Partners | $395 to $495 |
| Directors / Senior Directors | $350 to $395 |
| Principal Consultants | $295 to $375 |
| Consultants | $225 to $325 |
| Para Professionals / Analysts | $175 to $225 |
| Administrative Staff | $75 to $100 |

## 6.  Payment Terms

In recognition of these reduced hourly rates, we request that a $75,000 retainer be wired to our account upon execution of this Agreement.  We will work against this retainer and charge our fees and expenses as they are incurred.  We request that this be replenished in advance such that we are working against this retainer or such other subsequently determined amount, based upon our ongoing estimate of anticipated professional requirements.  Upon the filing of a bankruptcy petition, we will present invoices every two weeks for payment.  Subject to approval of by the bankruptcy court, payment procedure for our invoices will be 80% of fees and 100% reimbursement of expenses due immediately upon presentation of the invoice. We will file fee application in accordance with the United States Trustee guidelines and the local rules.  Payments should be made by electronic transfer in accordance with the following wire instructions.

| | |
|---|---|
| Bank Name: | Wells Fargo Bank |
| Bank City/State | San Francisco, CA |
| ABA Transit/Routing Number | 121042882 |
| Beneficiary Account Number: | 1661521250 |
| Beneficiary: | Avant Advisory Partners, LLC |
| Address | 4000 MacArthur Blvd, Suite 600, Newport Beach CA 92660 |

Our fees are not contingent upon the final results, and we do not warrant or predict the results, final developments, or what our findings may determine in this engagement. In addition to the fees described above, should it be required in the future, Avant will be compensated for the time of its staff members at their then hourly rates, and paid its expenses (including, without limitation, engagement-related administrative costs, and reasonable attorney's fees and expenses) that Avant may incur in connection with considering or responding to discovery requests or other requests for documents, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, as a result of Avant's performance of these services, including those related to executing or defending our fee applications in the event of a Chapter 11 or similar proceeding.  The parties agree that such compensation for any scheduled deposition services payable to Avant hereunder is reasonable under the circumstances, due to, among other reasons, the loss and/or potential loss incurred by Avant of other

Turnarounds & Restructuring        M&A Support        Enterprise Performance Improvement        Forensics        CFO Services        Financial Advisory

LEGAL124814221.1

Mr. Kirk Waldron
State Fish Co., Inc.
January 21, 2015



business opportunities by reason of its staff's time for such scheduled deposition.

**7.    Resolution of Disputes**

Upon the filing of a bankruptcy petition, the Bankruptcy Court shall have exclusive jurisdiction to resolve any dispute or controversy arising out of or relating to this Agreement, and all parties will be subject to the personal jurisdiction of the Bankruptcy Court in any such dispute or controversy.  Subject to Bankruptcy Court approval, the estate shall reimburse Avant for all costs and expenses (including the reasonable fees of outside counsel, court costs and arbitration fees) incurred by Avant in enforcing the terms of the engagement (including, without limitation, the collection of any amounts due to Avant) and/or resolving any dispute or controversy arising out of or otherwise relating to Avant's employment and/or the services performed by Avant.

**8.    Additional Provisions**

Avant shall not be precluded from performing services for any lender, financial institution, investor, or other person under contract with you to whom the Companies shall be indebted, or with whom the Companies undertake discussions regarding their business or otherwise. Confidential information, including your identity, obtained in the performance of the services hereunder will not be disclosed to such other parties, if any, except as you specifically authorize.

Avant has the right to publish a tombstone at its own expense describing its advisory services covered by this Agreement, which tombstone may include the Companies. Avant may include in promotional material and presentations the tombstone and outcome of the engagement derived from the project covered by this Agreement, provided that Avant will omit the names of all third parties with whom you conduct business.

This Agreement will be governed by and interpreted in accordance with the laws of the State of California, without regard to choice of law provisions. This Agreement constitutes our sole agreement and supersedes any and all prior oral or written agreements, promises or understandings among them relating to the subject matter hereof; no express or implied representations warranties or inducements have been made by any party to any other party except as described in this Agreement. This Agreement cannot be modified or changed except by a written instrument signed by each party, hereto. This Agreement will not be assigned or transferred in whole or in part by either party without the prior written consent of the other party, and any attempt to do so shall be void and unenforceable.  This Agreement may be terminated, at the discretion of either party, on ten days' prior written notice, in the event of a material breach of this Agreement by the other party, or with the consent of both parties.

********

Turnarounds & Restructuring        M&A Support        Enterprise Performance Improvement        Forensics        CFO Services        Financial Advisory

LEGAL124814221.1

Mr. Kirk Waldron
State Fish Co., Inc.
January 21, 2015

We would appreciate your signing and immediately returning this letter to us to confirm that you agree with the terms of this Agreement.

Very truly yours,

**Avant Advisory Partners, LLC**

State Fish Co., Inc.

_____

Michael M. Ozawa
Managing Director and Partner

_____

Kirk Waldron
Director
On behalf of the State Fish Board of Directors

January ___, 2015

January 22, 2015

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit "B"**

**Blanco Declaration**

I, George Blanco, declare as follows:

1.     I am a Managing Director of Avant Advisory Group ("*Avant*").    I make this declaration in support of the application ("*Application*") by the debtors State Fish Co., Inc. and Calpack Foods, LLC (collectively, the "*Debtors*") for entry of an order approving the assumption of the Debtors' pre-petition agreement with Avant and my appointment as Chief Restructuring Officer ("*CRO*"), under the terms and conditions set forth in the attached Engagement Letter. This declaration is submitted pursuant to Sections 330 and 504 of the Bankruptcy Code, and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure.    Except as otherwise stated, I have personal knowledge of the facts set forth herein and, if called upon as a witness, I could and would competently testify as to all matters hereto.

## PROFESSIONAL QUALIFICATIONS AND SERVICES PROVIDED

2.     Avant provides a broad range of business, executive, and consulting services to public, middle-market and growth companies.    It specializes in: (i) turnarounds, restructuring and bankruptcy, (ii) enterprise performance improvement, (iii) forensics, fraud investigations, and litigation support; (iv) mergers, acquisitions, and capital transactions, and (v) C-suite executive and interim management.    Avant has substantial experience in chapter 11 cases and other corporate restructurings, as evidenced by their retention in the bankruptcies of *In re No Fear Retail Stores, Inc., et al.*, S.D. Cal. Bankr. Case No. 11-02896-MM11, and *In re Mi Pueblo San Jose, Inc.*, N.D. Cal. Bankr. Case No. 13-53893-ASW.

3.     Avant has agreed to provide the following services in connection with these chapter 11 cases, as more fully set forth in the Engagement Letter:

a.   Reporting Relationship.    Avant will report directly to the Board of Directors of the Debtors (the "*Board*").   In addition, Avant will make available:

a.   George Blanco to serve as Chief Restructuring Officer.

1

b. Upon the mutual agreement of Avant and the Debtors, such additional Avant professionals as appropriate and necessary to support the CRO and assist in performing the duties set forth below (*"Additional Personnel"*).

b. <u>Specific Services</u>. During the term of the Agreement, as directed by the Board and in consultation and coordination with the Debtors' management team, legal counsel, and investment banker (if applicable), Avant will perform the following services:

   i. Complete a comprehensive study and analysis of the business, operations, capital structure, financial condition, projections (including cash flow and liquidity), and short- and long-term prospects of the related business operations.

   ii. Assist in identification of business and restructuring opportunities to best reflect the value options of the Debtors which may include the following areas: cost reductions, operational improvements, working capital management, revenue improvements, management and personnel changes, strategic and financing alternatives, or financial restructuring transactions for the Debtors (including a sale of the Debtors or the Debtors' assets). Avant will both identify opportunities for the Debtors and assist in executing those opportunities, wherever possible.

   iii. Help in preparation, analysis and monitoring of historical, current and projected financial affairs, including without limitation, if necessary, schedules of assets and liabilities, statements of financial affairs, periodic operating reports, evaluation of cash receipts and disbursements, review of cash flow forecasts, management of cash flows, analysis of various asset and liability accounts, analysis of any unusual or significant transactions between the Debtors and any other entities, and consideration of proposed restructuring transactions.

   iv. Approve or disapprove of new agreements or amendments or modifications to existing agreements between either of the Debtors and any former employee of either of the Debtors who is also a shareholder, directly or indirectly, of State Fish.

   v. Coordinate with and assist counsel and any other professionals retained by the Debtors as needed.

   vi. Meet with the Board (or members of the board), and appropriate management team members regarding the identification and evaluation of restructuring strategies, including various alternatives for improving profitability and managing cash flows to improve viability of the Debtors' business operations through a sales process. Avant will coordinate its actions with the Board, including its status of activities and critical issues that arise which should be surfaced for review by the Board.

c. Additionally, the following services represent activities that Avant may perform on behalf of the Debtors and the Board but are not intended to be comprehensive:

   i. Consult with the Debtors' management team regarding its existing restructuring plan, and other appropriate strategic alternatives to restructure, refinance, and help sell the Debtors or complete a transaction, as needed.

   ii. Conduct detailed walk-throughs of business operations to confirm, update and / or develop a tactical plan for strategic alternatives. In this regard, conduct a detailed

review of the 2015 business plan and assess key drivers affecting profitability and cash flows.

iii.    Review and analyze the Debtors' cash flow assumptions, and assist with updating the 13 week cash flow model, as needed. In this regard, review various scenarios and help develop a strategy for optimizing cash availability.

iv.    As appropriate, develop a tactical plan for managing vendor and other business relationships.

v.    Evaluate the need and options for debtor-in-possession ("*DIP*") financing to support the restructuring process or as needed to complete a transaction. As appropriate, identify and work with outside capital sources to complete a DIP financing.

vi.    Conduct such activities as needed to support the Debtors in the refinancing and / or sale of the businesses, including preparing needed support materials, assisting with management presentations, supporting negotiations to a transaction, and helping to populate a virtual or physical data room.

vii.    Participate in weekly or as otherwise scheduled meetings with the Board to review tactical plans and activities. In this regard, a specific area of focus will include the Debtors' liquidity position and options for improving cash flows and working capital availability over the next 60 to 90 days.

viii.    Avant will work directly with the Debtors' management to update the Board on options to generate cash and improve the Companies' liquidity position to support the restructuring process.

ix.    Review the Debtors' current budget and action plans and help identify those actions required to support an appropriately profitable business operations, including adjustments to labor costs and viability of selected products and customers subject to gross margin or dollar contribution.

x.    Work with appropriate personnel to update the fiscal 2015 monthly budget and, as needed, help to develop alternative scenarios and a multi-year set of projections.

xi.    Assist with negotiations and support related to the Debtors' lender, vendors and creditors to support a restructuring of the business and/or to complete a transaction.

xii.    Prepare a tactical plan with management for managing and negotiating with various parties-in-interest including vendors, lenders, and employees.

xiii.    As an alternative, should other options not materialize or cease to be viable, we would determine with management and counsel such other tasks and deliverables that would be needed to support negotiations with parties-in-interest, including

preparation of a liquidation analysis and/or tasks appropriate for a wind-down, as needed.

xiv.    Develop a strategy and those deliverables appropriate for updating the Debtors' lender regarding strategic alternatives, including serving as a DIP lender if determined to be the most appropriate strategic option.

xv.    Avant will also assist in preparation of the following activities:

a) Compile and assist with the preparation of information necessary to comply with requirements of the Bankruptcy Code.

b) Assist and facilitate the Debtors' communications and negotiations with creditors, shareholders, and other constituents, including, without limitation, any official committee of unsecured creditors and the Office of the United States Trustee (collectively, the *"Interested Parties"*). It is understood that Avant may be called upon to communicate regularly with the Interested Parties and their financial advisors and, as appropriate, furnish to such Interested Parties financial information relating to the Debtors.

c) Prepare information and disclosures to the Bankruptcy Court and/or Office of the United States Trustee;

d) Compile and assist with preparation of schedules of assets and liabilities, statements of financial affairs, and periodic operating reports;

e) Compile, assist with preparation, analyze and/or monitor historical, current and projected financial affairs, including analyses of cash receipts and disbursements, analyses of cash flow forecasts, management of cash flow, analyses of various asset and liability accounts, and analyses of any unusual or significant transactions between themselves and any other entities;

f) Along with counsel, identify and/or review preference payments, fraudulent conveyances, and any other causes of action;

g) Review and evaluate the claims process;

h) Attend meetings and court hearings as may be required, including participating as a testifying or consulting witness or expert as requested;

i) Provide such other services as may be requested by the Debtors and to which Avant agrees to provide.

## PROFESSIONAL COMPENSATION[2]

4.    The Engagement Letter was negotiated in good faith and at arm's-length between the Debtors and Avant.   Avant, Mr. Blanco, and the Additional Personnel assigned to this engagement have extensive experience providing management and financial services to distressed

---

[2] Capitalized terms used in this section that are not otherwise defined shall retain the same meanings given to them in the Engagement Letter.

companies. Their services are integral to the success of these chapter 11 cases. Denying the relief requested in this Application would force the Debtors to engage a new CRO who lacks a similar understanding of the Debtors' business and restructuring initiatives, both already in progress and those to be implemented. Hiring a new CRO would involve a steep learning curve, significant time and additional estate resources.

5. The fee structure in the Engagement Letter is consistent with and typical of compensation agreements entered into by Avant and other comparable firms in connection with the rendering of similar services under similar circumstances. The terms of the Engagement Letter are within the range of those for senior executive officers employed with companies of comparable size, value and reputation.

6. Avant has agreed to the following compensation structure with the Debtors in consideration of the services to be provided in these chapter 11 cases, as more fully described in the Engagement Letter:

(i) Approval of fees and costs to be paid to Avant by the Debtors shall be subject to one or more duly noticed fee applications to be approved by this Court.

(ii) On January 22, 2015, Avant received a retainer of $75,000 from the Debtors for postpetition services. In addition, on January 24, 2015, Avant received a payment of $19,704 in satisfaction of its prepetition fees and expenses.

(iii) Postpetition, Avant will present invoices to the Debtors every two weeks for payment. Subject to approval by the bankruptcy court, the interim payment procedure for its invoices will be 80% of fees and 100% reimbursement of expenses due immediately upon presentation of the invoice. Avant will file fee applications in accordance with the United States Trustee guidelines and the local rules, and all payments to Avant shall remain subject to review and approval under interim and final fee applications.

(iv) Hourly billing rates for Avant's most senior level professionals range up to $495 per hour for similar situations. However, Avant has committed to provide

George P. Blanco, managing director and partner, at a rate not to exceed $395 per hour, given the size of the Debtors and their marketplace. However, Messrs. Michael Ozawa and James Davidson would continue to charge up to $495 per hour for their specialized and technical support services. A schedule of professional fee rates is as follows:

| | |
|---|---|
| Managing Directors / Directors | $395 to $495 |
| Principal Consultants | $295 to $395 |
| Consultants | $225 to $325 |
| Para Professionals / Analysts | $175 to $250 |
| Administrative Staff | $75 to $100; |

(v)    In addition to the fees set forth above, Avant shall be entitled to reimbursement for actual out-of-pocket costs that include, when appropriate, travel/mileage, meals and lodging, photocopies, faxes, telephone charges, computer support, printing costs, miscellaneous charges, etc. In addition to the fees described above, should it be required in the future, Avant will be compensated for the time of its staff members at their then hourly rates, and paid its expenses (including, without limitation, engagement-related administrative costs, and reasonable attorney's fees and expenses) that Avant may incur in connection with considering or responding to discovery requests or other requests for documents, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, as a result of Avant's performance of these services, including those related to executing or defending Avant's fee applications in the event of a Chapter 11 or similar proceeding.

(vi)    The forum for handling of any dispute in fees will be the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

(vii) In addition, the Debtors will take appropriate measures to add Mr. Blanco as a covered party to the Debtors' directors and officers insurance, and all other relevant, active insurance policies carried by the Debtors.

## STATEMENT OF DISINTERESTEDNESS

7.    Avant is a "disinterested person," as the term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code. Moreover, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, Avant neither holds nor represents any interest adverse to the Debtors and their estates, and except as otherwise disclosed herein, has no connection to the Debtors or their significant creditors or certain other potential parties-in-interest whose names were supplied to Avant by the Debtors, as attached hereto and incorporated by reference herein as Exhibit "C." Other than as set forth in the Application and herein, Avant has no prior involvement with, or connection to, the Debtors.

8.    None of Avant's past or existing engagements would, or appears to, create an interest materially adverse to the interests of the Debtors, their creditors, or their equity security holders. As such, Avant is disinterested and holds no materially adverse interest as to the matters upon which they are to be retained. To the extent Avant discovers any additional facts bearing on its disinterestedness during the period of its retention, Avant will supplement the information contained herein.

9.    The Debtors maintain business relationships with numerous shareholders, lenders, creditors and other parties. Avant may have advisory or other commercial or professional relationships with such entities or persons completely unrelated to the Debtors or their business affairs. No such relationships are in any way related, however, to these chapter 11 cases. Avant has, among other things, searched its client databases to determine whether it represents, or has represented, certain of the Debtors' creditors or other parties-in-interest in these proceedings, and/or matters wholly unrelated to these proceedings. Avant has also informed the Debtors, in accordance with Section 504 of the Bankruptcy Code, that there is no agreement or understanding between Avant and any other entity, other than an employee of Avant, for the sharing of compensation received or to be received for services rendered in connection with these chapter 11 cases.

## COMPLIANCE WITH BANKRUPTCY CODE AND RULES

10.    I am generally familiar with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure as they pertain to the retention of professionals in these chapter 11 cases, and Avant will comply with them, subject to the Orders of this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of January, 2015, at _San Pedro, CA_.

George Blanco

**EXHIBIT "C"**

## CHECKED PARTIES

**Debtors**
Calpack Foods, LLC
State Fish Co., Inc.

**Lenders**
Farmers and Merchants Bank of Long Beach, a California corporation
Pan Pac LLC
Roseann DeLuca Revocable Trust dated October 6, 2011

**Equity Holders**
DeLuca, John Michael
Fred DiBernardo, Trustee for John Adam DeLuca
Fred DiBernardo, Trustee for Christopher DeLuca
Fred DiBernardo, Trustee for Samuel DeLuca
Fred DiBernardo, Trustee (trust not stated)
Janet M. Esposito SFC Trust dated October 6, 2011
Roseann DeLuca Revocable Trust dated October 6, 2011
Vanessa DeLuca, Successor Trustee for Caroline DeLuca
Vanessa DeLuca, Successor Trustee for Cristina DeLuca
Vanessa DeLuca, Successor Trustee for James DeLuca
Vanessa L. DeLuca SFC Trust dated October 6, 2011

**Former and Existing Directors & Officers**
DeLuca, Janet
DeLuca, Roseann
DeLuca, Vanessa
Esposito, Janet
Stolper, Mark
Waldron, Kirk

**Unsecured Creditors**
Agro America LLC
Amerisource Funding, Inc.
Ammon International
Avure Technologies Inc.
Bayside Seafood Inc.
Benner Metals
Bornstein Seafoods Inc.
Caito Fisheries
Cedar Cold Services
Cincinnati Seafood Imports
City of Torrance Utilities
CMA/CGM (American) Inc.
Coast Water Technologies, Inc.
County Sanitation Districts of Los Angeles
County of Los Angeles

Dept of Commerce / NOAA
Don Stockley Trucking
Equator Inc.
Evolution Fresh
Exotic Superfoods
Fortuna Sea Products, Inc.
F/V Carol-N-Rose, Inc.
Gabriel Container Co.
Get Well Roll-Off Inc.
Hamburg-SUD N.A. Inc.
Heath and Lejune
Hogiya Seafoods, Inc.
Internal Revenue Service
L.A. Garlic & Spice, Inc.
Los Angeles Tax Collector
Key & Company, LLC
M Seafood CorporationM/V Calogera A, Inc.
Maritime Products Int's
Monarch Trading, LLC
More Carnage, LLC
Pacific Seafood Company
P & P International, Inc.
Perricone Juices
Precision Label
Prosperity Funding, Inc. (Prosource)
Pref Freezer Svc of Newark LLC
Pt. Dharma Samudera Fishing Ind
Queen City Seafood
Restaurant Depot- Branch 53
Samskip Icepak Logistics, Inc.
San Francisco Seafood Express
Sea Catch Inc.
Seafax
Seattle Shrimp & Seafood LLC
Sercosta Sac
Southern California Edison
SPFM Enterprises
Springbuck-Penguin Inc.
Star Box, Inc.
Sugiyo USA
Sunrise Packaging Films
TFI Foods Ltd.
TM Sales Company
Total Quality Logistics
Triton Fishing
Wells Fargo Business Credit

- 2 -

Western Shield Label Company
ZF America

**Landlords**
Cedar Cold Services, LLC
Ironwood KB SPE, LLC
Ventura Port District dba Ventura Harbor Village
Woolson Family Partnership

**Other**
Atlantis Seafood
DeLuca, Lenore
J. DeLuca Fish Company, Inc.
Antarctica Advisors

- 3 -