# EXHIBIT 5

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Michael Leight, #71637
Law Offices of Michael Leight
6700 E. Pacific Coast Highway
Suite 237
Long Beach, CA 90803
　　　TELEPHONE NO: 562/430-1009　　FAX NO. *(Optional):* 562/431-2154
E-MAIL ADDRESS *(Optional):* admin@leightlaw.net
ATTORNEY FOR *(Name):* Michael Leight and the Law Offices of Michael Leight

**FILED**
Los Angeles Superior Court

**NOV 19 2013**

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
SHAUNYA WESLEY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: State Fish Co., Inc., Vanessa DeLuca,
Roseann DeLuca, and Janet Esposito
DEFENDANT/RESPONDENT: Michael Leight

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):* [x] **UNLIMITED CASE** (Amount demanded exceeds $25,000) [ ] **LIMITED CASE** (Amount demanded is $25,000 or less) | BC516682 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date: 5 December 2013　　　Time: 8:30 AM　　Dept.: 69　　Div.:　　　Room:
Address of court *(if different from the address above):*

[ ] Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [x] This statement is submitted by party *(name):* Michael Leight and Law Offices of Michael Leight
   b. [ ] This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [ ] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served *(specify names and explain why not):*
      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*
      (3) [ ] have had a default entered against them *(specify names):*
   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in [x] complaint [ ] cross-complaint　　*(Describe, including causes of action):*
   See Attachment 1, Section 4a

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Legal
Solutions
☞ Plus

Cal. Rules of Court,
rules 3.720–3.730

**CM-110**

| PLAINTIFF/PETITIONER: State Fish Co., Inc., Vanessa DeLuca, Roseann DeLuca, and Janet Esposito<br>DEFENDANT/RESPONDENT: Michael Leight | CASE NUMBER:<br>BC516682 |
|---|---|

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

See Attachment 1, Section 4b

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request  ☒ a jury trial ☐  a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):* jury fees were paid by Defendants on 12 September 2013.

6.  **Trial date**

a. ☐  The trial has been set for *(date):*

b. ☐  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):* See Attachment 1, Section 6b

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):* 12/11/13 (trial); 2/3/14 (10 day trial); 3/24/13 (5 day trial); 4/7/14 (5 day trial); 4/28/14 (5 day trial); 5/19/14 (7 day trial); 8/12/14 (5 day trial); 9/16/14 (5 day trial); 1/12/15 (5 day trial)

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one):*

a. ☒  days *(specify number):* 30

b. ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial  ☐ by the attorney or party listed in the caption ☐  by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:          f.   Fax number:

e.  E-mail address:          g.   Party represented:

☐  Additional representation is described in Attachment 8.

9.  **Preference**

☐  This case is entitled to preference *(specify code section):*

10.  **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel ☐  has ☐  has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party ☒  has ☐  has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

| | | **CM-110** |
|---|---|---|
| PLAINTIFF/PETITIONER: State Fish Co., Inc., Vanessa DeLuca, Roseann DeLuca, and Janet Esposito<br>DEFENDANT/RESPONDENT: Michael Leight | CASE NUMBER:<br>BC516682 | |

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (check all that apply and provide the specified information):

| | The party or parties completing this form **are willing** to participate in the following ADR processes (check all that apply): | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes (attach a copy of the parties' ADR stipulation): |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (date):<br>☐ Agreed to complete mediation by (date):<br>☐ Mediation completed on (date): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (date):<br>☐ Agreed to complete settlement conference by (date):<br>☐ Settlement conference completed on (date): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (date):<br>☐ Agreed to complete neutral evaluation by (date):<br>☐ Neutral evaluation completed on (date): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (date):<br>☐ Agreed to complete judicial arbitration by (date):<br>☐ Judicial arbitration completed on (date): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (date):<br>☐ Agreed to complete private arbitration by (date):<br>☐ Private arbitration completed on (date): |
| (6) Other (specify): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (date):<br>☐ Agreed to complete ADR session by (date):<br>☐ ADR completed on (date): |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: State Fish Co., Inc., Vanessa DeLuca, Roseann DeLuca, and Janet Esposito | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Michael Leight | BC516682 |

**11. Insurance**

   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

   b. Reservation of rights: ☐ Yes ☐ No

   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

   ☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

   a. ☒ There are companion, underlying, or related cases.

      (1) Name of case:

      (2) Name of court:

      (3) Case number:

      (4) Status:

   ☒ Additional cases are described in Attachment 13a.

   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| Defendants | written discovery | 7/31/14 |
| | non-expert depositions | 7/31/14 |
| Defendants | expert discovery and depositions | 9/30/14 |

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110

| PLAINTIFF/PETITIONER: State Fish Co., Inc., Vanessa DeLuca, Roseann DeLuca, and Janet Esposito<br>DEFENDANT/RESPONDENT: Michael Leight | CASE NUMBER:<br>BC516682 |
|---|---|

**17. Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed (if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):

**18. Other issues**

    ☒ The party or parties request that the following additional matters be considered or determined at the case management conference (specify): Neither mediation nor any other form of alternative dispute resolution will be useful in this case. If any portion of the case survives pleading motions and motions for summary judgment/adjudication, it will be tried.

**19. Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court (if not, explain):

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following (specify):

**20. Total number of pages attached (if any):** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: 11-15-13

Michael Leight
_____
    (TYPE OR PRINT NAME)    ▶    (SIGNATURE OF PARTY OR ATTORNEY)

_____
    (TYPE OR PRINT NAME)    ▶    (SIGNATURE OF PARTY OR ATTORNEY)

    ☐ Additional signatures are attached.

**Attachment 1 to the Case Management Statement Submitted by
Defendants, Michael Leight and the Law Offices of Michael Leight**

State Fish Co. vs. Leight
Case No. BC516682

*Section 4a*

Plaintiff, **State Fish Company, Inc**. (SFC), claims that
Defendants, **Michael Leight**  and the **Law Offices of Michael Leight**
(hereinafter collectively referred to as "Leight"), committed
legal malpractice and breached their fiduciary duty to SFC by not
refiling a claim, which SFC voluntarily dismissed, without
prejudice, in *2006*, for damages for legal malpractice against
**Fred J. DiBernardo, Esq.** (DiBernardo), former counsel for SFC.

The remaining Plaintiffs claim that Leight committed legal
malpractice and breached his fiduciary duty to them because he
received and used allegedly confidential documents which resulted
in DiBernardo, their uncle, filing a lawsuit in 2007 (Documents
Lawsuit) against Plaintiffs and Leight, causing Plaintiffs to
incur legal costs to defend the Documents Lawsuit and to settle
it in *May 2011*, over two years before this lawsuit was filed.

Leight denies having any liability of any kind to any
Plaintiff.

///

1

1

2

### _Section 4b_

3    _SFC's Claims Against DiBernardo - The Plant 2 Lawsuit_

4

5    In early *2006*, Leight informed SFC, its officers, and

6    directors, that there were problems with SFC's potential claims

7    against DiBernardo based upon the statute of limitations and

8    based upon their knowledge of and participation and acquiescence

9    in DiBernardo's actions over the course of about *15 years* before

10    Leight was ever consulted or retained by SFC or by any of the

11    other Plaintiffs.

12

13    Leight informed all Plaintiffs, verbally and in writing, of

14    potential problems with the statute of limitations and in July

15    2006, recommended that all Plaintiffs *consult another attorney to get a*

16    *second and independent opinion* about the statute of limitation problems

17    affecting SFC's potential claims against DiBernardo.  Those

18    problems existed before SFC or any of the other Plaintiffs ever

19    met or consulted Leight.

20

21    SFC's only concern when Leight was hired was to prevent John

22    DeLuca (John), the brother of the individual plaintiffs, from

23    evicting SFC from a fish processing/blast freezing/cold storage

24    facility known internally at SFC as "Plant 2".

25

26    Leight was successful in obtaining that result at trial when

27    the trial judge, after a bench trial, ruled that SFC, and not

28    John, owned Plant 2.  However, the Court of Appeal, in its

2

1  Opinion filed on *27 July 2011* in appellate case no. B219714,

2  reversed the judgment of the trial court and concluded that Plant

3  2 was owned by John and that he had established the defense of

4  *laches* against SFC's claims as a matter of law [Opinion, page 22]

5  because SFC waited over *15 years* after the alleged misconduct of

6  John and DiBernardo to complain about that conduct, and it waited

7  until after the death of an important witness, *Sam DeLuca* (the

8  father of John and the individual Plaintiffs), in 2002, to

9  complain about that conduct.

10

11      In its Opinion filed on 27 July 2011, the Court of Appeal

12  stated, with respect to the application of the doctrine of

13  laches, that:

14

15      •   *"The death of an important witness (Sam DeLuca) may*

16          *constitute prejudice (citations omitted)";*

17

18      •   *"This is true even if the defendant does not establish*

19          *that the deceased witness would have given testimony*

20          *favorable to him (citations omitted)";*

21

22      •   *"As to prejudice, an element of laches, Sam's stroke in*

23          *1996 and death in 2002 necessarily established*

24          *prejudice";*

25

26      •   *"That State Fish did not bring its complaint for*

27          *usurpation of corporate opportunity until after Sam had*

28          *passed away and was therefore unable to testify as to*

3

1    *his understanding of the transaction was necessarily*

2    *prejudicial."* (Opinion, page 24).

3

4    Also in its Opinion, the Court of Appeal stated that *"State*

5    *Fish was necessarily aware that John obtained (Plant 2) in 1991*

6    *without offering it to State Fish; no secret was made of John's*

7    *acquisition of the plant, and State Fish immediately began paying*

8    *rent to John"* [Opinion, page 24].

9

10   There was also, in the words of the Court of Appeal, *"no*

11   *secret"* of DiBernardo's involvement in the transaction which

12   resulted in the transfer of title to Plant 2 to John in 1991.

13   All of the individual Plaintiffs were officers, directors, or

14   employees, or some combination thereof, of SFC at the time of the

15   transfer of title to Plant 2 to John in 1991.  One of the

16   plaintiffs, *Roseann DeLuca*, who was then licensed as a real estate

17   broker, *notarized the deed* which transferred title.

18

19   Since SFC's claims against John for acts that occurred with

20   the assistance of DiBernardo in 1991 were barred by the doctrine

21   of laches, it follows, logically and legally, that all of SFC's

22   claims against DiBernardo were also barred by the doctrine of

23   laches because SFC was aware of DiBernardo's involvement and did

24   nothing to complain about it for approximately *15 years* until after

25   Sam died and John attempted to evict SFC from Plant 2 in late

26   2005 and early 2006.

27

28   ///

4

1    Similarly, the claims against DiBernardo based upon alleged

2  malpractice were barred before any of the Plaintiffs ever met,

3  consulted, or retained Leight.

4

5    Although DiBernardo was initially named as a defendant in

6  the litigation over Plant 2, which resulted in the Opinion

7  described above, he was dismissed early in the case for strategic

8  reasons with the knowledge and approval of SFC and all of the

9  individual Plaintiffs.

10

11    From the time Leight began representing SFC in 2006 to the

12  time this lawsuit against Leight was filed, no Plaintiff ever

13  complained to Leight about the quality of his legal work.  During

14  the course of his work as an attorney for SFC, Leight received

15  communications from various Plaintiffs commending him for the

16  quality and diligence of his work on behalf of SFC.

17

18    In July 2008, long after DiBernardo had been dismissed from

19  the Plant 2 litigation with her approval, SFC's then majority

20  shareholder, the late *Rose DeLuca* (the mother of the individual

21  Plaintiffs), wrote to Leight:

22

23        *"Please know how much we appreciate your sincere effort on our*

24        *behalf.  We are blessed and fortunate to have you on our side."*

25

26    Plaintiff, *Vanessa DeLuca*, was living with, and subsequently

27  married, a lawyer, during the time that Leight represented SFC.

28  That lawyer was employed by SFC and was familiar with its

5

1  operations.  He was familiar with and dealt directly with

2  DiBernardo for over 15 years before Leight was ever hired, and he

3  was aware of everything DiBernardo did or failed to do for SFC

4  before any of the Plaintiffs ever met or consulted Leight.  He

5  took no action against DiBernardo and never suggested that Leight

6  take any action against DiBernardo.

7

8      SFC was represented by other lawyers in matters related to

9  DiBernardo in 2011 and 2012, and Leight never received any

10  criticism from these other lawyers at any time before the

11  complaint in this case was filed.

12

13      The late *Rose DeLuca*, the mother of the individual Plaintiffs

14  and John, was, until her death in September 2012, the majority

15  owner of SFC.  She specifically and repeatedly told Leight that

16  she did not want to sue her brother, DiBernardo, no matter how

17  badly he might have damaged SFC.  She and the individual

18  Plaintiffs in this case repeatedly told Leight that SFC's only

19  real goal was to prevent John from depriving it of ownership and

20  use of Plant 2.  Leight has been unfairly deprived of the ability

21  to obtain testimony from Rose DeLuca because Plaintiffs waited

22  until after her death to file this lawsuit.

23

24      In reversing the trial court's judgment in favor of SFC in

25  the Plant 2 case, the Court of Appeal, in its Opinion, stated, in

26  essence, that:

27

28  ///

6

1      •      SFC was aware of every aspect of the transaction

2   transferring Plant 2 to John in 1991, including DiBernardo's

3   involvement;

4

5      •      SFC approved of that transaction through its then

6   owners, *Sam DeLuca*, who died in 2002, and his wife, *Rose DeLuca*, who

7   died in 2012;

8

9      •      SFC's claims were barred as a matter of law by the

10  doctrine of laches;

11

12     •      The late Rose DeLuca wrote a letter to her son, John,

13  in 2005, before any of the Plaintiffs met Leight, confirming that

14  John, not SFC, owned Plant 2 as a result of the generosity of his

15  parents;

16

17     •      In 2005, confronted with a situation where John was

18  threatening to leave SFC and evict SFC from Plant 2 so that he

19  could use it in a competitive business that he started and about

20  which he told Plaintiffs, none of the Plaintiffs ever told John

21  that he was not the owner of Plant 2 and none of them ever

22  accused DiBernardo of legal malpractice or breach of fiduciary

23  duty and, in fact, after he resigned in November 2005, they sent

24  DiBernardo a letter *thanking him* for the legal work he did for SFC

25  over the years.

26

27     All of those communications by Rose and by the individual

28  Plaintiffs were made *before* any Plaintiff ever met or spoke to

7

1  Leight about anything.  In fact, some of the communications from

2  Rose and the individual Plaintiffs to John were drafted with the

3  assistance of *another attorney* that the Plaintiffs consulted before

4  they hired Leight.  That attorney is also deceased.

5

6      In 2006, SFC knew and consented to DiBernardo's dismissal as

7  a defendant in the Plant 2 lawsuit.  Until the lawsuit now before

8  this court was filed, SFC never accused Leight of dismissing

9  DiBernardo without its knowledge and consent.  It never hired

10  Leight to file a lawsuit making the same allegations made against

11  DiBernardo in the Plant 2 lawsuit.  It never criticized Leight

12  for allegedly failing to file a new lawsuit against DiBernardo.

13  It never expressed any dissatisfaction with Leight's work, and it

14  never accused Leight of legal malpractice until it filed this

15  lawsuit.

16

17            SFC's Claims Against DiBernardo Not Related
18                   to the Plant 2 Transaction

19

20      After John started the avalanche of litigation, described in

21  more detail below, in June 2006, the individual Plaintiffs began

22  complaining about other conduct of DiBernardo while he acted as

23  counsel for SFC.

24

25      All of that conduct occurred when the individual Plaintiffs

26  were either officers, employees, or directors of SFC, or some

27  combination thereof.

28

                                    8

1    As an example, DiBernardo created an entity that he used to

2  transact business with SFC.  That business included leasing cars

3  to SFC's officers and directors (including the individual

4  Plaintiffs in this case), leasing employees to SFC, and receiving

5  hundreds of thousands of dollars in "consulting fees" from SFC.

6

7    When questioned about this conduct, DiBernardo claimed that

8  the late Sam DeLuca, who was then SFC's president, was the

9  architect of the car leasing plan, the employee leasing plan, and

10  the consulting fee arrangement, all of which resulted in tax

11  benefits to SFC.

12

13    Again, the individual Plaintiffs knew of and participated in

14  all of the foregoing transactions.  All of them drove automobiles

15  which SFC "leased" from DiBernardo's entity.  All of them knew of

16  the employee leasing plan designed to reduce SFC's workers'

17  compensation insurance premiums, and all of them knew of the

18  consulting fees paid to DiBernardo by SFC, but none of them made

19  any complaint about any of the foregoing practices before

20  DiBernardo quit as SFC's counsel in November, 2005.

21

22    SFC received tax benefits from the auto leasing plan, the

23  employee leasing plan, and it took deductions for the consulting

24  fees paid to DiBernardo's entity.

25

26    If SFC is asserting that Leight committed malpractice by not

27  timely suing DiBernardo for these other activities, SFC's claims

28  have no merit because:

9

1    •    They are barred by the doctrine of laches;

2

3    •    They were barred by the statute of limitations before

4    anyone from SFC ever met, consulted, or hired Leight;

5

6    •    SFC consented to them, participated in them, and

7    obtained benefits from them.

8

9                    The Documents Lawsuit

10

11       In the Documents Lawsuit, the individual defendants signed a

12   written disclosure and waiver of conflict agreement with Leight.

13   In the same lawsuit, the individual defendants were represented

14   and advised by *independent counsel*, other than Leight, at all times

15   during the course of the case, including on the day they agreed

16   to settle and sign the final settlement documentation in *May*

17   *2011*, more than two years before this lawsuit was filed.  The

18   settlement agreement signed by Plaintiffs is signed by their

19   independent counsel acting on their behalf. When they signed that

20   settlement agreement, they knowingly released all claims against

21   DiBernardo and against Leight.

22

23       At no time during the course of the Documents Lawsuit did

24   any of the Plaintiffs instruct Leight to destroy or return any of

25   the alleged confidential documents but, to the contrary,

26   repeatedly told Leight that the documents actually belonged to

27   SFC and not to DiBernardo.  They told Leight that DiBernardo's

28   claims were false.  They told Leight, repeatedly, that they did

                                    10

1   not want the documents, which were the subject of the lawsuit,

2   delivered to DiBernardo by Leight or destroyed because they

3   wanted to be able to use them against John.

4

5       In 2010, the individual Plaintiffs initially agreed to

6   settle the Documents Lawsuit for a sum much less than the amount

7   they subsequently agreed to pay, but they reneged on that

8   settlement and refused to sign the settlement agreement against

9   the advice of their independent counsel.  DiBernardo and his

10  counsel actually signed the 2010 settlement agreement and

11  *independent counsel for Plaintiffs also signed it* but, after verbally agreeing to

12  its terms, the individual Plaintiffs refused to sign it, mainly

13  because they refused to turn over the allegedly confidential

14  documents.

15

16      Plaintiffs' claim about Leight being "*conflicted*" because he

17  was allegedly afraid of being reported to the State Bar of

18  California relative to the Documents Lawsuit is false because, as

19  all Plaintiffs knew before they filed this lawsuit, Leight self-

20  reported the filing of the Documents Lawsuit to the State Bar

21  within three months after it was filed in 2007, and the State Bar

22  declined to take any action against Leight.

23

24      When the Documents Lawsuit was settled and dismissed on 11

25  May 2011, it was settled pursuant to a written settlement

26  agreement signed by Plaintiffs, who understood that, by signing

27  it, they were giving up all claims against DiBernardo, including

28  any claims for legal malpractice and breach of fiduciary duty.

11

1  In the 29 months since they released all of their claims against

2  DiBernardo, none of them have ever claimed they didn't understand

3  that they were doing so when they signed the settlement agreement

4  in the Documents Lawsuit.

5

6      In other words, Plaintiffs knowingly and voluntarily gave up

7  any claims they may have ever had against DiBernardo for legal

8  malpractice, breach of fiduciary duty, or for any other wrongful

9  conduct, over two years before they filed this lawsuit against

10 Leight.   They sued Leight knowing that two years previously, they

11 had given up all claims against DiBernardo and Leight.

12

13     Throughout the Documents Lawsuit, they were represented by

14 independent counsel other than Leight and independent counsel

15 represented and consulted with them on the day the final

16 settlement agreement was reached and signed.   *That independent counsel*

17 *signed the settlement agreement as counsel for Plaintiffs.*

18

19                    <u>*Section 6b*</u>

20

21     The case will not be ready for trial within 12 months of its

22 filing date because, as Plaintiffs state in their *Civil Case*

23 *Cover Sheet* filed on 30 July 2013, this case is *complex* under Rule

24 3.400 of the California Rules of Court because it involves

25 extensive motion practice raising difficult or novel issues that

26 will be time-consuming to resolve, it involves a substantial

27 amount of documentary evidence, and a large number of witnesses.

28

                            12

1    The trial of this lawsuit will require presentation and

2    resolution of at least the following complex issues from dozens

3    of witnesses:

4

5    •    The transactions between Plaintiffs and DiBernardo

6    from the mid-1980s through late 2005, including whether

7    DiBernardo was acting as counsel, as a business advisor, as a

8    family member, or some combination thereof.

9

10    •    The knowledge of the Plaintiffs about all such

11    transactions and their participation in, approval of, or

12    objection to those transactions at the time they occurred.

13

14    •    Whether DiBernardo was acting as a lawyer for one or

15    more of the Plaintiffs and whether he breached his duties as a

16    lawyer to one or more of the Plaintiffs in connection with those

17    transactions.

18

19    •    If so, how he breached that duty.

20

21    •    If so, when he breached that duty.

22

23    •    If so, whether he damaged any Plaintiff and, if so, how

24    and in what amount.

25

26    •    If so, whether the claims against DiBernardo were

27    barred, before Leight was ever consulted or retained, by a

28    statute of limitations, by the doctrine of laches, or by the

13

1  participation in and acquiescence in those transactions by the

2  Plaintiffs.

3

4     •     Whether any judgment against DiBernardo would have been

5  collectible.

6

7     •     Whether Leight was hired by SFC specifically to sue

8  DiBernardo.

9

10    •     Whether SFC, as governed by the late Rose DeLuca,

11  wanted to sue DiBernardo, her brother.

12

13    •     Whether a suit against DiBernardo would have undermined

14  SFC's claims regarding ownership of Plant 2, thereby frustrating

15  SFC's real and only goal.

16

17    •     Whether the individual Plaintiffs have the right to

18  sue Leight after signing the settlement agreement in the

19  Documents Lawsuit agreeing to release all claims against

20  DiBernardo and against Leight.

21

22    •     Whether Leight breached a duty to SFC and, if so, how

23  and when.

24

25    •     If so, whether the alleged breach damaged SFC.

26

27    •     Whether *SFC's claims* against Leight are barred by the

28  doctrines of res judicata or collateral estoppel arising from the

14

1   Plant 2 lawsuit, or other lawsuits described below, by release,

2   by the statute of limitations, by the doctrine of laches, or by

3   the participation and acquiescence in those transactions by the

4   Plaintiffs.

5

6       •     Whether the *individual Plaintiffs' claims* against Leight are

7   barred by the doctrines of res judicata, collateral estoppel,

8   release, laches, unclean hands, acquiescence, or the statute of

9   limitations.

10

11      •     The amount of the tax benefits received by SFC as a

12  result of the conduct of DiBernardo about which Plaintiffs now

13  complain.

14

15      This case is made even more complex because between

16  approximately February 2006 and mid-August 2013, Leight

17  represented SFC, or the individual Plaintiffs, or some

18  combination of them, in the following lawsuits:

19

20      1.    *State Fish Co. vs. John DeLuca* (filed 2 August 2006),

21  consolidated with *John DeLuca vs. State Fish Co.* filed 2 June 2006 (Case

22  Nos. NC041884/BC353346).   Judgment was originally entered in

23  favor of SFC in this case on 11 August 2009.   The judgment in

24  favor of SFC was reversed by the Court of Appeal and the unlawful

25  detainer portion of the case was revived when the Court of Appeal

26  issued the Opinion described above.   The unlawful detainer case

27  was retried.   Judgment in favor of John and against SFC was

28  entered on 2 November 2012.   SFC subsequently vacated Plant 2.

15

1  SFC appealed the monetary portion of the judgment, claiming it

2  was entitled to additional offsets, and John cross-appealed.

3  Both appeals are pending.

4

5      2.   *John DeLuca v. State Fish Co., Inc.* filed 13 September 2006 (Case

6  No. BC358395).  This case has been tried and is under submission.

7

8      3.   *Eugene Nalette v. State Fish Co.*, Inc. filed 22 December 2006

9  (Case No. BC363821).  Plaintiff dismissed this case with

10 prejudice on 21 August 2008.

11

12     4.   *DiBernardo v. Leight* [Documents Lawsuit] filed 2 February

13 2007 (Case No. BC365900).  The case was settled and dismissed in

14 May 2011.

15

16     5.   *Jean DuFour vs. State Fish Co., Inc.* filed 22 February 2007 (Case

17 No. BC366761).  Plaintiff dismissed this case with prejudice on

18 10 February 2009.

19

20     6.   *State Fish Co., Inc. v. DiBernardo* filed 2 November 2007 (Case

21 No. NC042394).  This case was dismissed in May 2011.

22

23     7.   *J. DeLuca Fish Co. vs. State Fish Co.* filed 28 May 2008 (Case no.

24 BC391583).

25

26     8.   *DeLuca vs. State Fish Co.* filed 5 August 2008 (Case No.

27 BS116235).

28

16

9.    *John DeLuca v. State Fish Co., Inc.* filed 2 November 2009 (Case No. BC417064).

10.   *State Fish Co., Inc. v. David J. Pasternak* filed 2 December 2009 (Case No. BC427133).  This case was dismissed by SFC on 18 April 2013.

An additional lawsuit in which Leight did not represent SFC, entitled *State Fish Co. vs. John DeLuca and Albert Demers,* was filed on 29 September 2011 (Case No. NC044211).  Leight never represented SFC in this case.  SFC hired Cox, Castle & Nicholson to file that case against John and Albert Demers, the life partner of DiBernardo.  Defendants' demurrers were sustained without leave to amend and judgment was entered in their favor on *24 July 2012.*

All of the thousands of pages of documents generated in the cases listed above, including pleadings, motions, declarations, deposition transcripts, correspondence, settlement agreements, judgments, appellate opinions, etc., are going to have to be reviewed to see what information they contain about DiBernardo and his professional and personal relationship with Plaintiffs and the late Rose and Sam DeLuca, about Plaintiffs' comments about him, and their knowledge of and acquiescence in his activities.

Additionally, after the settlement of the Documents Lawsuit in May 2011, some of the individual Plaintiffs began telling Leight they were thinking about filing another lawsuit against

17

1  DiBernardo.  When Leight reminded them what they had been told

2  previously, by Leight and by their independent counsel, that they

3  released all of their claims against DiBernardo in May 2011, when

4  they signed the settlement agreement in the Documents Lawsuit,

5  they hired other counsel, Cox, Castle & Nicholson, to file a new

6  lawsuit on behalf of SFC (case no. NC044211) on 29 September 2011

7  against John DeLuca and Albert Demers, DiBernardo's life partner.

8

9      SFC was unsuccessful in that lawsuit.  If it becomes

10  necessary to do so, Leight will describe what Plaintiffs told him

11  their motivation was in filing this post-release lawsuit against

12  John and Mr. Demers.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  13-4110att1/kb/sm

18

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I, the undersigned, declare that I am, and was at the time of service of the papers herein referred to, over the age of 18 and not a party to the within action or proceeding.  My business address is 6700 E. Pacific Coast Highway, Suite 237, Long Beach, California 90803.

    On __19__ November 2013, I served a true copy of the following document described as **Case Management Statement** on interested partes as follows:

John Tierney, Esq.
Tierney Knipe Law
655 N. Central Ave., Suite 1700
Glendale, CA 91203-1439

Scott J. Tepper, Esq.
Garfield & Tepper
1801 Century Park East, Suite 2400
Los Angeles, CA 90067-2326

_X__   BY MAIL - I caused such envelope(s) with postage thereon fully prepaid to be deposited in the U.S. mail at Long Beach, California, to the aforementioned addressee(s).

_____   BY FAX (CCP § 1013(a),(e)) by transmitting said document(s) by electronic facsimile from 562/431-2154 to the respective facsimile number(s) of the party(ies) stated above or on the attached service list.  The transmission was reported as complete without error.

_____   BY OVERNIGHT MAIL (CCP § 1013(c)).  I am readily familiar with the firm's practice of collection and processing correspondence for mailing with overnight mail.  Under that practice, it would be deposited with Federal Express or Overnite Express on that same day thereon fully prepaid at Long Beach, California in the ordinary course of business.  The envelope was sealed and placed for collection and mailing on that date following ordinary business practices.

_X__   (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____   (Federal)    I declare that I am employed in the office of a member of the bar of this court at whose direction the service is made.

Executed at Long Beach, California on __19__ November 2013.

_Stacy Morrison_
STACY MORRISON