Jeffrey Lee Costell (SBN 93688)
Alexandre Ian Cornelius (SBN 180652)
Lewis B. Adelson (SBN 185075)
**COSTELL & CORNELIUS LAW CORP.**
1299 Ocean Avenue, Suite 450
Santa Monica, CA 90401
*acornelius@costell-law.com*
Telephone:    (310) 458-5959
Facsimile:    (310) 458-7959

Sa'id Vakili, Esq. (SBN: 176322)
*vakili@vakili.com*
**VAKILI & LEUS, LLP**
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California 90010-2822
Telephone:    (213) 380-6010
Facsimile:    (213) 380-6051

John A. Schlaff, Esq. (SBN: 135748)
*john.schlaff@gmail.com*
**LAW OFFICES OF JOHN A. SCHLAFF**
2355 Westwood Boulevard, Suite 424
Los Angeles, California 90064-2109
Telephone:    (310) 474-2627
Facsimile:    (310) 362-8883

Attorneys for Creditor and Equity Interest Holder
John DeLuca

## UNITED STATES BANKRUPTCY COURT

## CENTRIAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| In re:<br><br>STATE FISH CO., INC. and<br><br>CALPACK FOOD, LLC<br><br>Debtors. | Lead Case No.: 2:15-bk-11084 SK<br>2:15-bk-11085 SK<br>Jointly Administered<br><br>Chapter 11<br><br>**OPPOSITION OF JOHN DELUCA TO DEBTORS' MOTION FOR FINAL ORDER ASSUMING DEBTORS' AGREEMENT WITH AVANT ADVISORY GROUP AND APPROVING MR. BLANCO AS CHIEF RESTRUCTURING OFFICER; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF STEPHANIE AMEZCUA, JOHN SCHLAFF, JOHN DELUCA AND DAVID J. PASTERNAK IN SUPPORT THEREOF**<br><br>Hearing Date: February 25, 2015<br>Time:    8:30 a.m.<br>Courtroom:    1575 |

1

**OPPOSITION TO MOTION TO APPROVING AVANT AND BLANCO'S APPOINTMENT**
f:\wpdocs\deluca, john\state fish bk\pleadings\objection to blanco motion\blanco opposition (said and c&c).docx

**TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................................... 2

II.  FACTUAL SUMMARY ............................................................................................. 5

III. STANDARDS .............................................................................................................. 8

IV.  THE COURT SHOULD DENY THE DEBTOR'S MOTION .................................... 8

    A.    The "Independent" Directors Are Neither Independent, Nor Directors, and Did Not Have Authority To Engage Blanco Or Avant ........................................ 8

    B.    The Court Should Not Approve The Employment Of Avant Or Blanco Because They Are Not Disinterested ................................................................ 10

        1.    *Blanco and Avant's Interests are Materially Adverse to the Estate and the Debtor's Creditors* ....................................................................... 11

        2.    *Blanco and Avant cannot be employed because Blanco – if the Purported Directors who Purport to Have Filed the Bankruptcy Petition Had the Authority to Do So -- Was, and Is, an officer of the Debtor* ............................................................................................. 12

        3.    *Blanco and Avant cannot be employed because they are insiders* ....... 13

        4.    *The interests of Blanco and Avant are adverse to the interests of the estate and its creditors* ...................................................................... 15

V.   CONCLUSION ......................................................................................................... 17

i

**OPPOSITION TO MOTION TO APPROVING AVANT AND BLANCO'S APPOINTMENT**
c:\users\jgalliver\appdata\local\microsoft\windows\temporary internet files\content.outlook\x2wj3c2i\blanco opposition - toc-toa.docx

# TABLE OF CASE AUTHORITIES

**California Cases**

Jones v. H.F. Ahmanson & Co.,
   1 Cal.3d 93 (1969) .......................................................................................... 8-9

Remillard Brick Co. v. Remillard-Dandini,
   109 Cal.App.2d 405 (1952) ............................................................................. 7-8

Smith v. Tele-Communication, Inc.,
   134 Cal.App.3d 338 (1982) ............................................................................. 7-8

**Non-California State Cases**

In re Oracle Corp. Derivative Litigation,
   824 A.2d 917 (Del. Ch. 2003) ......................................................................... 7-8

**Federal Cases -- General**

Brewer v. Erwin & Erwin (In re Marquam Investment Corp.),
   942 F.2d 1462 (9th Cir. 1991) ....................................................................... 10-11

In re Zoran Corporation Derivative Litigation,
   511 F.Supp.2d 986 (2007; N.D., California) .................................................... 8-9

Pepper v. Litton,
   308 U.S. 295 (1939) ...................................................................................... 10-11

**Federal Cases -- Bankruptcy**

In re Capitol Metals, Inc,
   228 B.R. 724 (9th Cir. BAP 1998) ................................................................ 13-14

In re CIC Investment Corp.,
   175 B.R. 52 (9th Cir. BAP 1994) .................................................................... 6, 8

In re Crook,
   79 B.R. 475 (9th Cir. BAP 1987) .................................................................... 6, 8

In re Keravision,
   273 B.R. 614 (B.C. N.D. Cal. 2002) ............................................................... 9-10

In re United Color Press, Inc,
   129 B.R. 143 (B.C. S.D. Ohio 1991) ............................................................ 12-14

In re Yuba Westgold, Inc.,
   157 B.R. 869 (B.C. N.D. Iowa 1993) ........................................................... 11-12

TO THE HONORABLE COURT, THE DEBTOR AND ITS COUNSEL OF RECORD, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:

MEMORANDUM OF POINTS AND AUTHORITIES

I.  INTRODUCTION

Creditor and equity interest holder John Michael DeLuca ("John DeLuca") hereby submits his Opposition (the "Opposition") to the motion (the "Motion") of debtor State Fish Company, Inc. ("Debtor") for a Final Order Assuming the Debtor's Agreement with Avant Advisory Group and Approving Mr. Blanco's Appointment as Chief Restructuring Officer. The Court should deny the Motion. Mr. Blanco was not properly hired, does not need to be hired under 11 U.S.C. § 327 and Avant is not "disinterested" because he is an officer of the Debtor, an insider under Section 101(31) and at the same time a manager and partner of a consulting company, Avant, which was hired under a pre-petition contract which is subject to assumption or rejection under Section 365.

The whole corporate structure urged upon the Court is an artifice designed to leave the DeLuca Sisters, Vanessa DeLuca, Janet Esposito and Roseann DeLuca, in control of the Debtor (but without any corresponding fiduciary duties) and in order to avoid the outright dismissal of this sham bankruptcy petition or the appointment of a Chapter 11 Trustee. The declaration of Vanessa DeLuca makes it crystal clear that the Motion to appoint a CRO is really about the State Action. Over the course of almost a decade of litigation, the DeLuca Sisters were willing to maintain status quo as to the company's operations so long as those operations worked to their own personal benefit, but on the eve of a judgment being entered against them, the DeLuca Sisters have precipitated a self-created purported "emergency need" for a CRO to restructure their debts. There is no actual "emergency", and the Motion lacks credibility when it argues that an alternative CRO cannot be hired because such a CRO "lacks a similar understanding of the Debtors' business and restructuring goals" and there would be a "steep learning curve" for any alternative CRO (or, presumably a Chapter 11 Trustee). (Motion at 8:2-5.) This case has been pending for less than two weeks and the CRO was

OPPOSITION TO MOTION TO APPROVING AVANT AND BLANCO'S APPOINTMENT

allegedly hired only weeks ago.

What is clear, is that the DeLuca sisters are trying to avoid the impact of The State Court's imminent ruling against them, which would cause them to lose control of the company they have abused for their own personal benefit at the expense of its minority shareholders. The "insolvency" and "restructuring" needs are a sham. It is simply a subterfuge to avoid judgment. There is no evidence that the Debtors were not meeting their debts as they came due.

In fact, the DeLuca Sisters have, in effect, attempted to select their own Chapter 11 Trustee by illegally retaining consultants who are meant to be running the Debtor without any of the controls or duties that a Chapter 11 Trustee has to the Court and the creditor body. While Mr. Blanco and Avant may be qualified consultants, the Court need not approve this artifice and manipulation of the Bankruptcy Code just so the DeLuca Sisters can maintain control. And there is no doubt that they remain in control because the power to hire and fire is the ultimate control and they purport to be able to vote out their alleged independent directors (who are neither independent nor directors because their appointment was an illegal artifice and because they were selected by the DeLuca Sisters and serve at their pleasure), reelect themselves, pressure the alleged independent directors and, as the evidence shows, all the while continue to work at the Debtor on a daily basis. The Court need not countenance this self-serving manipulation.

John DeLuca's Opposition is based on this Notice, the accompanying Memorandum of Points and Authorities, the declaration of Stephanie Amezcua (the "Amezcua Dec."), the declaration of John DeLuca, the declaration of David Pasternak (the "Pasternak Dec."), and the declaration and supplemental declarations of John Schlaff (the "Schlaff Dec." and the "Suppl. Schlaff Dec.", respectively), and the complete records and files in this case and upon such other and further evidence and arguments as may be permitted at the hearing on this matter.

WHEREFORE, John DeLuca prays that the Court will deny the Debtor's Motion in its entirety, with prejudice. Alternatively, John DeLuca prays that: (i) the Court deny the Motion

as to Avant Advisory Group as they are not "disinterested" since Mr. Blanco is an insider; and (ii) without prejudice to John DeLuca seeking to dismiss the bankruptcy, remove Blanco and/or to seek appointment of a Chapter 11 Trustee. If Mr. Blanco is to serve as the Chief Reorganization Officer of the Debtor (for the time being) and the Debtor claims that he was properly appointed as an officer, then the Court need not approve his employment under 11 U.S.C. § 327 and Mr. Blanco can simply be paid as any other insider pursuant to the Office of the United States Trustee's insider compensation forms.

## II. FACTUAL SUMMARY.

State Fish Company, Inc. ("State Fish"), the Debtor and Debtor-in-possession ("Debtor"), filed its instant bankruptcy petition (the "Petition") on January 26, 2015.[1] The same day, the Debtor submitted its instant Motion in which it sought an order: (1) assuming the Debtor's purported agreement with the Avant Advisory Group ("Avant"); and (2) approving Avant's managing director and partner, George Blanco ("Blanco") as the Chief Restructuring Officer ("CRO") of the Debtor. (Dkt. 19.) In support of its Motion, the Debtor also filed the declaration of Vanessa DeLuca. (Dkt. 18.) On January 28, 2015, John DeLuca filed his initial Objection to the Motion. (Dkt. No. 47.) Also, on January 28, John DeLuca filed: (i) his Omnibus Supplemental Points and Authorities and declaration of John A. Schlaff (Dkt. 48); and (ii) his Request for Judicial Notice (Dkt. 45), both of which are hereby incorporated by this reference. The Court issued an order scheduling the final hearing for February 25, 2015.

The history of the disputes among John DeLuca, the Debtor, and Vanessa DeLuca, Roseann DeLuca and Janet Esposito (the "DeLuca Sisters") have been set out in John DeLuca's prior pleadings in this case and are further discussed in the Supplemental Schlaff

---

[1] As shall be discussed, the persons who have purported to have filed the Instant Petition were and are without any legal authority to do so, and have no legitimate legal standing at State Fish. They are neither duly appointed officers nor directors of State Fish, and the State Court has repeatedly made rulings finding their appointment to be illegal and a nullity. All references herein which refer to State Fish as being the Debtor are *arguendo* – State Fish is not properly before this Court at all and Creditor John DeLuca anticipates filing a motion to dismiss the Petition on that and other bases as soon as is practicable.

4
**OPPOSITION TO MOTION TO APPROVING AVANT AND BLANCO'S APPOINTMENT**

1  Decl.. However, for purposes of this Opposition, it suffices to say that the facts show that the
2  DeLuca Sisters, who are the majority stock holders of the Debtor, and who are still effectively
3  in control of the Debtor, purported to cause the Debtor to file this instant bankruptcy petition
4  in an apparent subterfuge to evade the judgment of the state court (the "State Court"), which
5  was about to enter judgment against the DeLuca Sisters removing them and their alleged
6  independent directors from the board of the Debtor and appointing truly independent directors
7  or a receiver.

8      In 2006, John DeLuca and other minority shareholders in the Debtor, brought both a
9  direct and derivative shareholder action, <u>John DeLuca et al v. Rose DeLuca, State Fish Co.
10 Inc., et al</u>, Los Angeles Superior Case No.: BC 358395 (the "State Action") to address willful
11 misconduct and breach of fiduciary duties by the DeLuca Sisters and their co-conspirator,
12 Susan Ricci ("Ricci") (collectively, the "Individual Defendants"), as to the Debtor and to
13 require the majority shareholders in the Debtor, the DeLuca Sisters to repay to the Debtor and
14 the minority shareholders millions of dollars the DeLuca Sisters had syphoned out of the
15 Debtor to pay their own legal expenses. (*See* Dkt. 48-1.)

16     After eight years of litigation and a *one-and-a-half year* bench trial involving more
17 than thirty days of testimony interspersed with the filing of more than twenty-five trial briefs,
18 the Plaintiffs in the State Action proved outrageous ongoing dishonesty and wrongdoing by the
19 DeLuca Sisters. On April 4, 2014, Judge Hiroshige of Department 54 of the Los Angeles
20 Superior Court (the "State Court"), in an initial ruling as required by California Rule of Court
21 ("CRC") 3.1590(a)(b)(c) (3) (the "April 4th Ruling"), indicated that it was his intent to remove
22 each and every one of the directors (*i.e.*, the DeLuca Sisters and Ricci). (*See* Dkt. 48-1.) The
23 State Court also indicated that it would order an accounting in order to determine the amount
24 of legal fees that the DeLuca Sisters had unlawfully syphoned from the Debtor to pay for their
25 own legal fees in various actions. Furthermore, the State Court found that, among other
26 things, the DeLuca Sisters had "engaged in dishonest acts or gross abuse of authority or
27 discretion with reference to [the Debtor.]" (*See* Dkt. 45-7, p.13.) (See, Schlaff Dec., ¶¶4, 5,
28

6, and 7).

Thereafter, the DeLuca Sisters acting through both nominal and *de facto* counsel engaged in multiple attempts to convince the State Court that (1) the DeLuca Sisters were entitled to secretly put in place their own replacements and (2) that such replacements could take steps to liquidate, or otherwise bind, State Fish. The State Court rebuffed each of these arguments explicitly adopting as its own ruling each of the arguments set forth in the papers filed by the State Action Plaintiffs. *See* Suppl. Schlaff Dec., ¶¶ 7, 11, and Exhibits 8 and 10. Among others, these arguments included each and all of the following: (1) any appointment of anyone to the State Fish board prior to the seating of Mr. David Pasternak (a truly independent professional whom State Fish, the DeLuca Sisters and the State Action Plaintiffs had previously stipulated could be seated as an independent member of the State Fish board of directors) was illegal; (2) the DeLuca Sisters were barred under common law principals and California Corporations Code §310 from voting for the persons who would be charged with collecting judgments in the State Action from the DeLuca Sisters on behalf of State Fish; and (3) the Bylaws pursuant to which the DeLuca Sisters purported to have elected their replacements in secret were illegally enacted and a nullity.

On Friday, January 30, 2015, the State Court was to have a hearing at which time it would resolve all objections to its April 4th Ruling and enter judgment. (*See* Dkt. 48-1.) (See, Schlaff Dec., ¶9). However, on Monday, January 26, 2015, the Debtor filed its instant Chapter 11 Bankruptcy Petition (the "Petition"). The declaration of Vanessa DeLuca submitted by the Debtor on January 26, 2015 in support of the Debtor's "First Day Motions" and the Unanimous Written Consent of Board of Directors attached to the Petition, indicates that the DeLuca Sisters and Ricci resigned from the Debtor's board of directors on January 23, 2104. (*See* Dkt. 18, ¶¶28-31.) The Vanessa DeLuca Dec., then goes on to state "to the extent the Independent Directors or the CRO deem it necessary or appropriate" Vanessa DeLuca, Roseann DeLuca and Ricci will be hired to provide "consulting services" as "independent contractors" to the Debtor. (*Id.*) In fact, this means that they will and are still running the day

6

OPPOSITION TO MOTION TO APPROVING AVANT AND BLANCO'S APPOINTMENT

to day business of the Debtor and the Amezcua Dec. makes this clear because Vanessa DeLuca has been at the Debtor's offices every day this week.

Moreover, prior to their resignations from the board of directors, the DeLuca Sisters and Ricci also purported to appoint their own successor board members. (Dkt. 18, ¶24.) As has already been alluded to, the State Court has already embraced the position that those appointments were void acts, but even assuming, *arguendo*, that this was not the case, the Motion would still need to be denied. Vanessa DeLuca claims that these new supposed board members are "independent" but they clearly are not since they can be fired and voted out by the DeLuca Sisters. Vanessa DeLuca also states in her declaration that the so-called independent board (which was hand-picked by the DeLuca Sisters prior to their resignations) appointed Blanco to be the "chief restructuring officer" of the Debtor. (Dkt. 18, ¶25.) Additionally, this supposedly independent board also apparently ratified hiring Avant as a financial advisor to Blanco – which just happens to be Blanco's own firm in which he is not only a partner but also the managing director. (Dkt. 18, ¶25; Dkt. 19, p.21, ¶5.)

The facts related to this Opposition are more fully set forth in the John DeLuca Dec., the Schlaff Dec., and the Amezcua Dec.

### III. STANDARDS

The applicant bears the burden of proving that the standards for appointment have been met. *In re Crook*, 79 B.R. 475, 478 (9th Cir. BAP 1987). The decision by a bankruptcy court to deny or approve an employment application is generally reviewed for abuse of discretion. *In re CIC Investment Corp.*, 175 B.R. 52, 53 (9th Cir. BAP 1994).

### IV. THE COURT SHOULD DENY THE DEBTORS' MOTION

#### A. The "Independent" Directors Are Neither Independent, Nor Directors, and Did Not Have Authority To Engage Blanco Or Avant

According to the Vanessa DeLuca Dec., Mr. Waldren, one of the two supposed "independent" directors purportedly elected to State Fish's board by the DeLuca Sisters, appointed Blanco. Neither Mr. Waldren, however, nor his fellow purported "independent"

7

OPPOSITION TO MOTION TO APPROVING AVANT AND BLANCO'S APPOINTMENT

director, Mr. Stopler, were properly elected to the board. Their election is a nullity such that they cannot act for the Debtor or bind the Debtor to agreements.

First, at the time that Mr. Waldren and Mr. Stopler were purportedly elected to the board, David Pasternak held one of their seats. See, Pasternak Dec., *passim*. Neither Mr. Waldren nor Mr. Stopler could be seated ahead of Mr. Pasternak. Furthermore, neither in their capacity as directors or shareholders could the DeLuca Sisters properly have voted to appoint new directors who would be charged with collecting a multi-million dollar judgment against them in connection with the State Action. Under California law, corporate directors and majority shareholders are fiduciaries not only to their corporations, but also to the corporation's minority shareholders. Remillard Brick Co. v. Remillard-Dandini, 109 Cal.App.2d 405, 419 (1952) [holding that it is "Hornbook law that directors . . . bear a fiduciary relationship to the corporation, and to all the stockholders . . . including the minority stockholders"]; Smith v. Tele-Communication, Inc., 134 Cal.App.3d 338, 343-344 (1982) [holding same with respect to minority sharehloders]. As such, directors and majority shareholders must abstain from making decisions in which they are personally interested. In re Oracle Corp. Derivative Litigation, 824 A.2d 917 (Del. Ch. 2003) [holding that it is improper to give force to the act of a director when there is a question whether the "director is, for any substantial reason, incapable of making a decision with only the best interest of the corporation in mind".] Even acts which a majority shareholder and/or director might otherwise be able to do as a matter of absolute right in the absence of a negative impact on the minority shareholders become illegal if they would have a disproportionate negative effect on the minority shareholders. Jones v. H.F. Ahmanson & Co., 1 Cal.3d 93, 108-112 (1969) [holding that while in the absence of prejudice to the minority, the majority would have the unfettered right to sell off the corporation, no such right exists when the minority shareholders will bear a

disproportionate burden from such sale]:

> Self-dealing in whatever form it occurs should be handled with rough hands for what it is -- dishonest dealing. And while it is often difficult to discover self-dealing in mergers, consolidations, **_sale of all the assets or dissolution and liquidation_**, the difficulty makes it even more imperative that the search be thorough and relentless.
> Id. at 1 Cal.3d 111; emphasis added.

By both statute and at common law, a corporate act or transaction effected through the votes of interested directors is void or voidable. Corporations Code § 310; Jones, supra. Directors are deemed interested in a matter if they have a direct financial interest therein -- that, however, is not the only basis upon which a director may be deemed "interested". "[I]f a corporate decision will have a materially detrimental impact on the director, but not the corporation or its stockholders, a director can be considered interested." In re Zoran Corporation Derivative Litigation, 511 F.Supp.2d 986, 1003 (2007; N.D., California).

The impact of the foregoing standards is clear -- the Individual Defendants' secret appointment of "independent" directors immediately following the State Court's April 4 Ruling was a self-serving and illegal act. There is no question that the choice of independent directors is one in which the Individual Defendants are profoundly personally interested. The independent directors who eventually take the Individual Defendants' places at State Fish will be the persons who are responsible for enforcing the State Court's multi-million dollar judgment against the Individual Defendants. Allowing the Individual Defendants to appoint the persons responsible for prosecuting a multi-million dollar judgment against them is the moral equivalent of allowing a criminal to pick his own judge, jurors, and -- in the vanishingly small possibility of a conviction under such circumstances -- his own jailor.

How can this possibly be permissible? To ask the question is to answer it, and indeed the Court in the State Action has repeatedly adopted the foregoing arguments as its own

findings that the appointment of the so called "independent directors" was and is a nullity. Suppl. Schlaff Decl., ¶¶ 7, 11 and Exhibits 8 and 10.

Furthermore, even setting aside these issues (which, respectfully, the Court should not do) the Debtor's Motion provides the "engagement" letter (the "Engagement Letter") setting forth the terms of the services agreement between Avant and the Debtor. (Dkt. 19, p.16-23.) Curiously, the Engagement Letter indicates that it is signed by Kirk Waldron – one of the purported "independent" directors of the Debtor – on January <u>22</u>, 2015. Yet, the corporate resolution of the board of directors of the Debtor that was attached to the Petition, and which ostensibly authorized the Debtor filing its Petition, indicates that the DeLuca Sisters and Ricci did not resign from the board until January <u>23</u>, 2015. (Dkt. 1, p.4.) Accordingly, Kirk Waldron was not yet authorized to hire Avant to act as the professional consultant to the Debtor.

Furthermore, even assuming that Kirk Waldron had been appointed as a director on January 22, 2015 when he executed the Engagement Letter, he still could not have signed it because only an officer of a corporation can enter into contracts on the corporation's behalf. *See* California *Corporations Code* §313(a) (the corporation shall have officers as may be necessary to enable it to sign instruments). Here, there is no evidence provided by the Debtor that Mr. Waldron was also an officer of the Debtor when he signed the Engagement Letter. Accordingly, Avant was never authorized to act as the financial advisor to the Debtor.

B.  **The Court Should Not Approve The Employment Of Avant Or Blanco Because They Are Not Disinterested**

The Debtor seeks to retain both Avant and Blanco as professionals pursuant to 11 U.S.C. §327(a). (Motion, Dkt. 19, p.9:16-17.) Section 327(a), however, provides that only persons that are disinterested and who do not represent an interest adverse to the estate may be employed as professionals. The Court "*must* make an individualize inquiry to determine whether a person has an interest which is adverse to the estate." (emphasis added) *In re*

*Keravision, Inc.*, 273 B.R. 614, 618 (B.C. N.D. Cal. 2002). Yet, here, the facts submitted by the Debtor clearly show that Blanco and his firm, Avant, are not disinterested and, in fact, likely represent an interest adverse to the Debtor's estate.

11 U.S.C. §101(14) defines persons that are "disinterested." Section 101(14) provides that a "disinterested" person is one who: (i) is not an "insider;" (ii) has not been a director, officer or employee of the debtor within the 2 years before the petition; and (iii) does not have an interest materially adverse to the estate or any class of creditors. Here, the facts submitted by the Debtor clearly shows that Blanco and his firm, Avant, are disqualified from being employed by the Debtor for the following reasons.

### 1. *Blanco and Avant's Interests are Materially Adverse to the Estate and the Debtor's Creditors*

The timing of Blanco and Avant's employment, the timing of the petition, and the fact that the Motion was filed on an emergency basis all demonstrate why the Motion should be denied. Neither Blanco nor Avant are actually disinterested but, rather, are being used (or are susceptible to being used) as an extension of the DeLuca Sisters to run the day-to-day operations of the Debtor, a result in direct conflict with the April 4th Ruling. While Avant and Blanco may be qualified and may be "good people" the circumstances of their hiring and the artifice it has created in these cases, in effect, a substitution for a Chapter 11 Trustee must be rejected as an undermining of the April 4th Ruling.

The Motion to employ Blanco and Avant is nothing more than a tactical move on the part of the Debtor to seek to prevent the dismissal of these bankruptcy cases and/or the appointment of a truly independent Chapter 11 Trustee. In light of the Superior Court's orders demonstrating the DeLuca Sisters' systematic fraud and mismanagement, this Court should give strict scrutiny to any prospective employees that were hand-picked by the DeLuca Sisters. Transactions with insiders, in particular, warrant strict scrutiny by the Court. *See, e.g., Brewer v. Erwin & Erwin (In re Marquam Investment Corp.)*, 942 F.2d 1462, 1465 (9th Cir. 1991) (affirming the denial of an insider attorneys' legal fees claim, because "[t]he

Supreme Court has instructed that an insider's dealings with a bankrupt corporation must be 'subjected to rigorous scrutiny,'" and finding that "not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.") (*citing Pepper v. Litton*, 308 U.S. 295, 306 (1939)). Here, there has been no such showing of "inherent fairness," and, in fact, the evidence reflects an inherent conflict between the interests of the DeLuca Sisters and their prospective professionals, including Blanco, and the interests of the Debtors' estates.

These bankruptcy cases should be dismissed, but in the event they are not, there is no question that a Chapter 11 Trustee should be appointed in lieu of a CRO hand-picked by the same parties that defrauded the Debtor and its creditors. Among other things, a Chapter 11 Trustee: (i) investigates the Debtor's acts, conduct, assets, liabilities, financial condition, and operation (11 U.S.C. § 1106(a)(3)); and (ii) prepares and files an investigative report regarding any fraud, dishonesty, incompetence, misconduct, or mismanagement by the Debtor (11 U.S.C. § 1106(a)(4)). It is clear that the DeLuca Sisters wish to avoid such further scrutiny, and it is highly likely that neither Blanco nor Avant will engage in such scrutiny.

    2.    *Blanco and Avant cannot be employed because Blanco – if the Purported Directors who Purport to Have Filed the Bankruptcy Petition Had the Authority to Do So -- Was, and Is, an officer of the Debtor*

While the fact of the matter is that this Bankruptcy has been improperly filed by persons who do not actually hold any legal position at State Fish, making the assumption that the so-called independent directors had such authority is still fatal to the employment of Blanco because under those circumstances Blanco was an officer of the Debtor within 2 years of its instant Petition and is, therefore not disinterested – thereby disqualifying him as being employed by the Debtor. The declaration of Vanessa DeLuca submitted in support of the Debtor's Motion provides that Blanco was appointed by the Debtor's board of directors (the same board that the DeLuca Sisters themselves appointed) on January 24, 2015. (Dkt. 18, p.7,

¶25.) The Debtor's instant Petition was filed on January 26, 2015. (Dkt. 1.) Plainly, the Court cannot approve Blanco as the "CRO" of the Debtor because he is not disinterested on account of him being appointed as an officer prepetition and within the last two years of the Petition.

The Debtor may argue that Blanco should not be disqualified from being employed by the Debtor pursuant to 11 U.S.C. §1107(b), which provides that "[n]otwithstanding section 327(a)...a person is not disqualified for employment...by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." This section creates a limited exception to Section 327(a) for persons who would otherwise be disqualified from employment solely on account of their prepetition employment with a debtor. However, as stated in *In re Yuba Westgold, Inc.*, 157 B.R. 869, 872 (B.C. N.D. Iowa 1993), "[section 107(b)] does not apply to all interested persons, but only to those who fail to be disinterested solely because of prior employment." (internal quotations omitted.) Yet, as shown below, Blanco is not disqualified *solely* on account of his prior employment with the Debtor as an officer but, rather because Blanco's status of being an insider and having been appointed by biased current directors who serve at the pleasure and behest of the DeLuca Sisters, and on account of his adverse interest to the Debtor. "Section 1107(b) does not provide an exception to the disinterested requirement to permit employment of insider[s]...." *Id*. Here, as shown below, it is clear that Blanco and Avant are effectively insiders and the Court should not grant the Debtors' Motion.

3.   *Blanco and Avant cannot be employed because they are insiders*

11 U.S.C. §101(14)(A) provides that a person who is an "insider" is not disinterested. Yet, Blanco and his company, Avant, are insiders and, therefore, cannot be employed by the Debtor. 11 U.S.C. §101(31)(B)(ii), (vi), (F) identifies certain "insiders" of a corporation, which includes an "officer," a "person in control of the debtor," and a "managing agent of the debtor." Here, as shown above, Blanco is an officer and, therefore, is an insider who is clearly not disinterested. Furthermore, the papers submitted by the Debtor show that Blanco is also a

13

OPPOSITION TO MOTION TO APPROVING AVANT AND BLANCO'S APPOINTMENT

person "in control" and "managing agent" of the Debtor in light of Blanco's engagement just prior to the Petition Date. The Motion also states that Avant will "report directly to the Board of Directors" of the Debtor, who (to the extent they exist at all) were hand-picked by the DeLuca Sisters before they pretended to "step down" in violation of the Superior Court's orders. (Dkt. 19, p.6:6-7.) Accordingly, it is evident that Blanco and Avant are in control of the Debtor for purposes of 11 U.S.C. §101(31).

In *In re United Color Press, Inc.*, 129 B.R. 143, 144 (B.C. S.D. Ohio 1991), the debtor, UCP, requested, prepetition, that Buccino and Associates, Inc. ("B&A") provide an assessment of its financial and operational condition and to assist UCP in turning its financial situation around. However, despite B&A's efforts, UCP filed a chapter 11 petition. Id. Prior to filing bankruptcy, however, UCP realized that it did not have enough directors to authorize a bankruptcy and, therefore, UCP requested that B&A's vice-president, Morro, to serve on its board. *Id*. Morro later testified that approving the UCP's bankruptcy resolution was the sole action taken by him as its director. *Id*. The same day it filed its petition, UCP entered into an agreement with B&A for it to essentially act as UCP's reorganization officer. *Id*. Upon application of UCP to employ B&A, the United States objected to the same on the ground that B&A was not disinterested and was an "insider" because its vice-president, Morro had served as the debtor's director. *Id*. at 146. The court held that it is bound by the strict language of §327(a) that prohibited B&A from being employed by the debtor because one of its employees had served as the director of the debtor. *Id*. at 147.

Here, just as in *In re United Color Press, Inc.*, Blanco and Avant should be considered insiders and not disinterested because Blanco has served as the chief restructuring officer of the Debtor.

Furthermore, in *In re Capitol Metals, Inc.*, 228 B.R. 724, 725 (9th Cir. BAP 1998), the debtor, Capitol, had entered into an agreement prepetition for a Mr. Peterson to act as its CFO. Peterson was also the co-principal of ABC Markets Group ("ABC). *Id*. Capital had also entered into an agreement for ABC to act on its behalf to effectuate a sale of Capitol. *Id*.

14

OPPOSITION TO MOTION TO APPROVING AVANT AND BLANCO'S APPOINTMENT

When a proposed buyer of Capitol that ABC had secured backed out, Capitol filed a chapter 11 petition. *Id*. Capitol then filed an application to employ ABC as its exclusive financial advisor and investment banker and disclosed that Debtor had hired ABC prepetition. *Id*. at 725-26. The Creditors' Committee objected to Capitol's application on the ground that ABC was not disinterested due to the prepetition employment of Peterson. *Id*. at 726. The bankruptcy court granted the application on the ground that Peterson was never formally hired. *Id*.

However, the Ninth Circuit reversed. First, the court held that Peterson had most certainly acted as the CFO of Capitol regardless of whether he was formally hired and was, therefore, disqualified from being hired. *Id*. at 727. As to Peterson's firm, ABC, the court held that although there is no per se rule that a firm is not disinterested "solely" because its principal "was" an officer of the debtor, the circumstances of the case compelled the court to hold that ABC was not disinterested (namely that Peterson would be the one working with the debtor). *Id*.

Similarly, here, the circumstances of this case should compel the Court to deny the Motion and rule that both Blanco and Avant are not disinterested.

    4.  ***The interests of Blanco and Avant are adverse to the interests of the estate and its creditors***

There are indicia of serious conflicts of interest arising from the Motion. The DeLuca Sisters still retain ultimate control over the Debtors and Blanco and the "Independent" Directors serve at the whim of the DeLuca Sisters, who apparently continue to orchestrate the operations of the Debtors behind the scenes. Just as the DeLuca Sisters' interests are adverse to the interests of the Debtors' estates, so too are the interests of their agents, whether they are held out as "independent" or not.

The Motion does not disclose whether Blanco will work from his office at Avant, whether he will work on-site or whether the DeLuca sisters will run day to day as independent contractors or contractors or consultants (as it is patently clear that Vanessa DeLuca is still

15

OPPOSITION TO MOTION TO APPROVING AVANT AND BLANCO'S APPOINTMENT

running the day to day operations since she was at the Debtor's office every day this week) (see Amezcua Dec.) and whether there will, in effect, be any change in day-to-day operations of the Debtor. Moreover, the Motion does not provide whether Avant represents any of the Debtor's competitors, or even whether Blanco or have any experience whatsoever with the wet fish business. These are facts that are conspicuously absent from the Debtor's Motion and its supporting declarations and the lack of the same makes it impossible for the Court or interested parties to understand what experience he has and whether other conflicts exist.

V.  **CONCLUSION**

WHEREFORE, John DeLuca prays that the Court will deny the Debtor's Motion in its entirety, with prejudice. Alternatively, John DeLuca prays that: (i) the Court deny the Motion as to Avant Advisory Group; and (ii) without prejudice to John DeLuca seeking to (a) discharge the bankruptcy, (b) remove him and/or (c) seek appointment of a Chapter 11 Trustee, allow Mr. Blanco to serve as the Chief Reorganization Officer but not under 11 U.S.C. § 327 but simply as a hired officer and insider of the Debtor.

Date: February 6, 2015              **COSTELL & CORNELIUS LAW CORPORATION**

By:   /s/ Alexandre Ian Cornelius
      **Alexandre Ian Cornelius**
      Attorneys for Creditor and Equity Interest Holder
      John DeLuca